[Crim. No. 4420.   Third Dist.   July 27, 1967.]

In re ANTHONY G. GALLEGOS on Habeas Corpus.

Ralph Alpert, under appointment by the Court of Appeal, for Petitioner.

Thomas C. Lynch, Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Respondent.

BRAY, J.*—Petitioner,[1] now confined in Folsom State Prison at Represa, petitions this court for a writ of habeas corpus.[2]

## SOLE QUESTION PRESENTED

■ Where one convicted of violation of section 11530 of the Health and Safety Code (possession of marijuana) is committed as a narcotic addict for placement in the California Rehabilitation Center and the Adult Authority revokes his parole on prior convictions may he be returned to the superior court for sentence on the last conviction without being held at the center for 60 days, as seemingly required by the then section 6453 of the Penal Code (now Welf. & Inst. Code, § 3053.) ?

## RECORD

Petitioner was convicted in 1957 of violation of section 11500 of the Health and Safety Code (possession of narcotics) and sentenced to state prison for the term prescribed by law. In 1958 he was likewise convicted of violation of section 11500 of the Health and Safety Code and sentenced to state prison, his sentence to run concurrently with that of the 1957 conviction. In 1960 petitioner was convicted of violation of section 11530 of the Health and Safety Code (possession of marijuana) and served a term of imprisonment therefor in the state prison. On February 11, 1963, petitioner was released on parole from state prison and was still on parole at the time of his next conviction.

On October 14, 1964, petitioner was again convicted of violation of section 11530. On February 2, 1965, after proceedings taken pursuant to section 6451 of the Penal Code (now Welf. & Inst. Code, § 3051), petitioner was found to be a drug addict and committed for placement as provided by law in the California Rehabilitation Center. He was received at the California Rehabilitation Center at Corona on February 5, 1965. On March 15, 1965, following petitioner's plea of guilty to

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Petitioner petitioned in propria persona. At the hearing of the order to show cause petitioner was represented by an attorney appointed by this court.

[2]Petitioner petitioned the Sacramento Superior Court for a writ of habeas corpus on the same ground offered here. It was denied.

three counts of parole violation, the Adult Authority revoked his parole and ordered his return to prison. On or about March 16, the superintendent of the rehabilitation center certified to the superior court that a diagnostic study of petitioner by the center's staff had been completed and presented to the Adult Authority; that the Adult Authority, on March 15, revoked petitioner's parole, refused to relinquish its jurisdiction of the case so that petitioner might continue at the center and ordered petitioner returned to prison; and that therefore "recommitment to the regular facilities of the Department of Corrections would best meet the needs in this case."

On March 25, 1965, the judge of the superior court ordered that petitioner be transferred to the court for further proceedings, and on March 30, 1965, reinstated the criminal proceedings and ordered a supplemental probation report. On April 23 the court denied probation and sentenced petitioner to state prison for the term prescribed by law for violation of section 11530 of the Health and Safety Code. Petitioner is there confined pursuant to the commitment thereon.

PETITIONER PROPERLY COMMITTED TO STATE PRISON

Petitioner's sole contention is that under then section 6453 of the Penal Code (now Welf. & Inst. Code, § 3053), pursuant to which he was committed to the California Rehabilitation Center, the failure to keep him there for the 60 days mentioned in the section invalidated all subsequent proceedings. There is no merit to this contention.

This issue was recently settled by *People* v. *Ballin,* 66 Cal.2d 80 [56 Cal.Rptr. 893, 424 P.2d 333], where the defendant, as in the case at bench, had been committed to the California Rehabilitation Center, and while there the Adult Authority had revoked the parole granted him on a prior conviction and he was returned to prison. The trial court then dismissed its order of commitment to the rehabilitation center and sentenced him to a term in prison. To the contention that because of the commitment to the center the court had no power to sentence him to prison, the court said (at p. 82), "the Adult Authority's power to revoke parole takes precedence over any commitment to the rehabilitation center. (*People* v. *Rummel, supra,* 64 Cal.2d 515, 518 [50 Cal.Rptr. 785, 413 P.2d 673].) ██ Furthermore, a person who is serving a prison term is ineligible for treatment at the rehabilitation center, there being no provision in the law to transfer such a person to the rehabilitation center. (*People* v.

*Victor,* 62 Cal.2d 280, 295 . . . [42 Cal.Rptr. 199, 398 P.2d 391].)

"As a result, after the Adult Authority revoked defendant's parole, and it became necessary to return him to prison, he became ineligible for treatment at the rehabilitation center."[3]

In *In re Teran* (1966) 65 Cal.2d 523 [55 Cal.Rptr. 259, 421 P.2d 107], the petitioner, while on parole from a prior conviction of possession of heroin, was again convicted of the same offense and sentenced to prison. In 1966, while in prison, he sought habeas corpus on the ground, among others, that at the time of his 1963 sentence to prison the trial court had failed to determine whether he was a proper subject for the narcotics rehabilitation program. The record showed that on August 1, 1962, at the time of the second offense, the Adult Authority suspended his parole and ordered his return to prison, and on January 24, 1963, canceled his parole. On September 26, 1963, the petitioner pleaded guilty to the second offense and the court suspended proceedings in the criminal court and transferred the case to another department for proceedings under former Penal Code section 6451, to determine whether he was addicted to narcotics or in danger thereof. At this point in the recital of the proceedings, the reviewing court added the following footnote (p. 525 fn. 2): "Since the Adult Authority had already canceled defendant's parole and ordered his return to prison, the trial court should not have instituted proceedings under the narcotics rehabilitation program in the absence of indication by the Adult Authority that it would be willing to rescind its action if Teran were found by the court to be a proper subject for commitment to the narcotics rehabilitation program."

In the department to which the case was assigned the court found that Teran was not eligible for treatment at the rehabilitation center because of the revocation of his parole, and despite his counsel's plea that he be sent to the rehabilitation center, the court sentenced him to prison because the Adult Authority was "entitled to him." The reviewing court stated

[3]Petitioner relies upon *People* v. *Ballin* *(Cal.App) 53 Cal.Rptr. 331, which held that until the proceedings under the commitment to the rehabilitation center were fully terminated, it was improper to impose judgment in the criminal case. However, this decision was vacated by the Supreme Court granting a hearing in the case and issuing an opinion as above set forth.

*A hearing was granted by the Supreme Court on November 2, 1966. The final opinion of that court is reported in 66 Cal.2d 80 [56 Cal.Rptr. 893, 424 P.2d 333].

(p. 527) : "In the instant case the trial court terminated the proceedings under former section 6451 before Teran was medically examined with respect to the matter of addiction, but Teran is not entitled to relief because the Adult Authority had previously canceled his parole and ordered his return to prison." The court then denied the petition for a writ of habeas corpus.

In *In re Swearingen* (1966) 64 Cal.2d 519 [50 Cal.Rptr. 787, 413 P.2d 675], following the petitioner's plea of guilty to receiving stolen property and proceedings conducted pursuant to section 6451 of the Penal Code (now Welf. & Inst. Code, § 3051), the superior court found the petitioner to be a narcotic addict and committed him to the California Rehabilitation Center for treatment. At that time, the petitioner was on parole under a prior felony conviction. While at the rehabilitation center only 37 days, the authorities there determined that he was not a fit subject for treatment at the center and sent him to Chino for a hearing before the Adult Authority. Following the recommendation of the superintendent of the rehabilitation center, the Adult Authority on the 37th day regained jurisdiction and revoked the petitioner's parole. After more than 60 days from the date of the original commitment to the center, the superintendent certified to the superior court that the petitioner was not a fit subject for confinement or treatment in the center. The court ordered him to be returned to the county jail to await further proceedings. He then sought habeas corpus to be released from custody on the ground that although the certification that he was not a fit subject for confinement or treatment was made after the expiration of the 60-day period stated in the statute, the *conclusion* of his unfitness was made prior to the expiration thereof, and that therefore the procedure followed in his case was illegal.

The court, apparently holding that the recommendation concerning the petitioner should not have been made until he had been at the center for 60 days, nevertheless, flatly held: "The order of commitment had no effect upon petitioner's parole status. The power of the Adult Authority under Penal Code section 3060 to suspend or revoke a parole is not limited by the statutory provisions governing commitment of persons addicted to the use of narcotics or who by reason of repeated use are in imminent danger of becoming addicted." (P. 522, citing *People* v. *Rummel, supra,* 64 Cal.2d 515.) The court then pointed out that the Adult Authority had revoked the

petitioner's parole and stated that if, in its discretion, the Adult Authority should restore his parole, the petitioner should be returned to the court for recommitment to the rehabilitation center. Thus, the holding in *Swearingen* is to the effect that whether or not a paroled person committed to that center remains there the full 60 days, the Adult Authority's power to revoke the parole controls the commitment and on such revocation the person must be returned to court to be recommitted to the Adult Authority. The only difference between *Swearingen* and our case is that there the superintendent reported the petitioner unfit for treatment before the parole was revoked, whereas here the parole was revoked before the superintendent made his report. In either case, the Adult Authority's power exceeds that of commitment to the rehabilitation center.

In *Swearingen* the court said (at p. 522): "Should the Adult Authority in the exercise of its discretion now restore petitioner on parole, he should be returned to the trial court for recommitment to the rehabilitation center, subject to the powers of the Director of Corrections under Welfare and Institutions Code section 3053.''

In the instant case, as in *People* v. *Ballin,* 66 Cal.2d 80 [56 Cal.Rptr. 893, 424 P.2d 333]; *In re Swearingen, supra,* 64 Cal.2d 519; and *In re Teran, supra,* 65 Cal.2d 523, where in each case the court held that because of the revocation of parole the Director of Corrections had no alternative but to return the prisoner to court, the court properly dismissed its commitment order and entered judgment sentencing petitioner on the pending criminal charge.

Petitioner has requested that if this court determines (as we have) that his sentence to prison without his being held at the California Rehabilitation Center for 60 days was proper, we should make an order similar to that made in *In re Swearingen, supra,* namely, that should the Adult Authority in its discretion admit petitioner to parole, he should be returned to the trial court for recommitment to the rehabilitation center for the full 60-day evaluation which he did not receive on his prior commitment to the center. However, it would appear that to return petitioner to the rehabilitation center would be an idle act in view of the "Readmission Summary" and "Staff Recommendations" made at Corona on March 5, 1965, wherein it was found that petitioner "does not constitute a fit subject for commitment" under section 3051 of the Welfare and Institutions Code. The summary and recommendations

list his violation of a prior parole, his failure to adjust at the Narcotic Treatment Control Program of East Los Angeles Halfway House, his many derelictions, the fact that he is a discipline behavior problem, his refusal to regard the subjects of his convictions as criminal acts, his support in his delinquent attitudes and behavior by family members, and then state, ''The evidence is overwhelming that Subject does not and/or cannot accept a rehabilitative treatment program.'' They then state that his acts ''show a pattern of criminality which indicates a need for control rather than a placement in the California Rehabilitation Center for treatment.''

The situation as to a return for rehabilitative treatment is similar to that in *People* v. *Sunderman* (1966) 244 Cal.App. 2d 628 [53 Cal.Rptr. 326], where the appellant was removed from the rehabilitation center after being there only 45 days, due to the revocation of a prior parole by the Adult Authority based upon a recommendation to the authority by the center superintendent that his parole be revoked. There, as in the instant matter, the appellant requested that an order be made that when and if he was again admitted to parole, he be returned, as in *Swearingen,* to the court for recommitment to the center. In denying this request the court pointed out that ''no amount of additional observation or testing for the additional 15 days could affect the judgment exercised'' (p. 630) and that ''a return of this defendant could only result in the same facts as to his history being reconsidered after the formality of waiting 60 days to look at them.'' (P. 631.) So it is in the instant case.

Just prior to oral argument petitioner filed a ''traverse'' in which he set forth a number of alleged facts raising additional issues to those stated in his original petition. Neither the facts nor the additional issues appear in the petition. We have decided to consider the traverse as a new and additional petition for habeas corpus, and it will be acted upon separately.

The order to show cause is discharged and the petition for a writ of habeas corpus is denied.

Regan, J., and Friedman, Acting P. J., concurred.

A petition for a rehearing was denied August 23, 1967.