[Crim. No. 17610. Second Dist., Div. Four. Aug. 19, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ISRAEL GAONA HERNANDEZ, Defendant and Appellant.

## COUNSEL

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Laurence M. Sarnoff, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—In case No. 328428, the defendant was charged with possession of heroin for sale (Health & Saf. Code, § 11500.5), and was found guilty of the lesser included offense of possession of heroin (Health & Saf. Code, § 11500.)

In case No. A-100857 defendant was charged with violation of Health and Safety Code section 11500.5 and was found guilty as charged.

In case No. A-101776 defendant was charged with violation of Health and Safety Code section 11500, and was found guilty as charged.

Proceedings were adjourned, defendant was referred to department 95

to determine whether defendant was addicted to the use of narcotics or in imminent danger of becoming addicted.

Defendant was committed by department 95 to the California Rehabilitation Center (hereinafter sometimes referred to as the CRC); he was rejected by the CRC): he was returned to court, application to recommit defendant to the CRC was denied, and defendant was sentenced to state prison for the term prescribed by law, terms to run concurrently. Defendant appeals from the conviction.

## FACTS

The judge in department 95 found defendant eligible for the narcotics rehabilitation program, and defendant was committed to the Department of Corrections pursuant to Welfare and Institutions Code section 3051. The United States Department of Justice, Immigration and Naturalization Service, notified the CRC that a detainer had been placed on defendant and that it was the intent of the government that defendant be deported from the United States. The trial court was of the opinion that the rehabilitation program could not be successful with reference to someone who was going to be deported, and refused to recommit defendant to the CRC.

Defendant contends that it was not within the discretion of the Director of Corrections, through the superintendent of the CRC, to reject defendant on the grounds that defendant was going to be deported. Welfare and Institutions Code section 3053 provides as follows: "If at any time following receipt at the facility of a person committed pursuant to this article, the Director of Corrections concludes that the person, because of excessive criminality *or for other relevant reason,* is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted." (Italics added.)

Therefore, the basic issue before this court is whether pending deportation is another "relevant reason" within the meaning of the Welfare and Institutions Code section 3053.[1]

■ What is a "relevant reason" for returning defendant to the commit-

---

[1]Defendant is subject to deportation pursuant to 8 U.S.C. section 1251, subdivision (a) (11), which provides as follows:

"Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

" . . . . . . . . . . . . . .

"is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs . . .;"

ting court is a question addressed in the first instance to the sound discretion of the Director of Corrections (*People* v. *Pate* (1965) 234 Cal.App.2d 273 [73 Cal.Rptr. 823]), and whether or not the reasons were sufficiently serious is for the Director of Corrections and not for the court. (*People* v. *Marquez* (1966) 245 Cal.App.2d 253, 257 [53 Cal.Rptr. 854].) The "other reason," to be deemed "relevant" must relate to the party's fitness for the confinement or treatment in a rehabilitation facility. ■ The term "other relevant reason" is a distinct and broader additional reason for a person's return than "excessive criminality" and does not merely modify "excessive criminality." (*People* v. *Hannagan* (1967) 248 Cal.App.2d 107, 111-112 [56 Cal.Rptr. 429].) For instance, marginal intelligence and unwillingness or inability to participate either in the educational or therapeutic programs at the rehabilitation center has been considered by this court to be another "relevant reason." (*People* v. *Marquez* (1966) 245 Cal.App.2d 253, 257 [53 Cal.Rptr. 854].)

■ In the case at bench, pending deportation would clearly relate to the party's "fitness for 'confinement or treatment in a rehabilitation facility,' " within the standard of *People* v. *Hannagan, supra,* 248 Cal.App.2d 107, 111, since the program depends on continued availability for treatment. Also pending deportation would effect the party's ability "to participate either in the educational or therapeutic programs at the rehabilitation center," within the standard of *People* v. *Marquez, supra,* 245 Cal.App.2d 253, 257, since obviously defendant would not be able to participate in programs at the rehabilitation center when he is deported. The rehabilitation program contemplates an extended period of institutional and outpatient treatment. The law contemplates a seven-year commitment, and a minimum of six months spent as an inpatient, with the addict then being placed on outpatient status (Welf. & Inst. Code, §§ 3151, 3152, 3201), and pending deportation makes this program impossible. Clearly it is a relevant reason for a person's return.

The effect of a deportation detainer on the eligibility for treatment in the California Rehabilitation Center has apparently not been decided by the California courts. However, the effect of cancellation of parole on eligibility for treatment at the CRC has been decided by the courts.

The court said in *In re Teran* (1966) 65 Cal.2d 523, 525, footnote 2 [55 Cal.Rptr. 259, 421 P.2d 107], as follows: "Since the Adult Authority had already canceled defendant's parole and ordered his return to prison, the trial court should not have instituted proceedings under the narcotics rehabilitation program in the absence of indication by the Adult Authority that it would be willing to rescind its action if Teran were found by the

court to be a proper subject for commitment to the narcotics rehabilitation program."

The court in *In re Gallegos* (1967) 252 Cal.App.2d 997, 1002 [60 Cal.Rptr. 900], also held that, when the Adult Authority revokes parole, the defendant becomes ineligible for treatment at the rehabilitation center. In discussing the case of *In re Teran,* the *Gallegos* court said that the Adult Authority was "entitled to him [Teran]." The rule that the Adult Authority's revocation of parole controls the commitment has been reaffirmed in *People* v. *Ballin* (1967) 66 Cal.2d 80 [56 Cal.Rptr. 893, 424 P.2d 333], *In re Swearingen* (1966) 64 Cal.2d 519 [50 Cal.Rptr. 787, 413 P.2d 675], *People* v. *Miller* (1967) 253 Cal.App.2d 224 [61 Cal.Rptr. 155], and recently in *People* v. *Chasco* (1969) 276 Cal.App.2d 271 [80 Cal.Rptr. 667]. The situation before this court is analogous to the parole cases.

Since the pendency of the deportation proceedings is an adequate ground for rejection of defendant from the program we need not consider the other theories urged on us by counsel.

The judgments are affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 28, 1970.