[No. B131539. Second Dist., Div. Two. Sept. 30, 1999.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOSEPH LOUIS PEREZ, Real Party in Interest.

## COUNSEL

Gil Garcetti, District Attorney, George M. Palmer and Brentford J. Ferreira, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Michael P. Judge, Public Defender, Albert J. Menaster, James Vitek and Jack T. Weedin, Deputy Public Defenders, for Real Party in Interest.

## OPINION

**BOREN, P. J.**—The People seek a writ of mandate directing the superior court to set aside an order granting a motion to dismiss a petition filed pursuant to the Sexually Violent Predators Act (SVP Act) (Welf. & Inst. Code, § 6600 et seq.)[1] against real party, Joseph Louis Perez, a legal immigrant. Perez claims that because he will be deported before he can receive the benefit of conditional release and outpatient treatment provided for in the SVP Act, any commitment under the SVP Act would violate the equal protection provisions of the state and federal constitutions. We hold that neither the action of the People in filing the SVP Act petition nor the decision of the federal government to defer action on Perez's deportation pending the outcome of the SVP Act petition has resulted in invidiously discriminatory disparate treatment under the otherwise neutral SVP Act. We conclude, therefore, that the superior court erred in dismissing the SVP Act petition filed against Perez.

### SUMMARY OF FACTS

The People filed a SVP Act petition against Perez, a legal immigrant, alleging that he is a sexually violent offender. Attached to the petition were exhibits showing that Perez had been convicted of numerous counts of sexual abuse of a child, and had, as a result, been sentenced to a lengthy prison term. Later, an amended petition was filed adding an out-of-state conviction for lewd assault suffered by Perez in 1977.

Perez moved to dismiss the petition claiming that because he will be deported before he can receive the benefit of conditional release and outpatient treatment provided for in the SVP Act, any commitment under the SVP Act would violate the equal protection provisions of the state and federal Constitutions.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

At the hearing held on the motion to dismiss, an Immigration and Naturalization Service (INS) special agent, Craig Porter, testified as to the removal (deportation) procedures employed by the INS where, as here, an alien has committed a crime. He testified that Perez would not be allowed to be released to the community. Porter was not asked, and thus expressed no opinion, as to whether Perez would be allowed to be released to the community should an outpatient treatment program be made available to him.

The trial court adopted Perez's equal protection argument, and granted his motion to dismiss the SVP Act petition. This petition for writ of mandate followed.

## CONTENTIONS

The People contend that the order dismissing the SVP Act petition was premature because it is speculative as to whether Perez will be deported should he be released to the community. The People also contend that the SVP Act does not violate the equal protection provisions of the federal and state constitutions.

## DISCUSSION

A. *The SVP Act.*

The SVP Act mandates psychological and psychiatric evaluation of specified convicted sex offenders before release at the end of their penal terms. If a sex offender is diagnosed with a current mental disorder that predisposes him to commit further violent sex crimes, a civil petition may be filed seeking to have him institutionalized for treatment. If proven beyond a reasonable doubt to a jury that the sex offender is a danger to others because he has a continuing mental disorder which makes it likely that he will commit future violent sex crimes if released without treatment, the sex offender may be committed for treatment in a mental health facility. Treatment may last as long as the mental disorder continues, but in no event longer than two years unless a further commitment petition is successfully pursued. (§ 6600 et seq.)

The treatment provided to a person committed under the SVP Act must be "consistent with current institutional standards for the treatment of sex offenders, and shall be based on a structured treatment protocol developed by the State Department of Mental Health." (§ 6606, subd. (c).) Initially, the SVP Act contemplates treatment in a secure facility located on the grounds

of an institution under the jurisdiction of the Department of Corrections. (§ 6604.) Thereafter, the SVP Act provides at least three methods whereby a person may be conditionally released into community outpatient programs as part of his or her ongoing treatment. At least once every year, a committee shall have his or her mental condition examined by the State Department of Mental Health and, should the committee so request, by an expert or professional person. (§ 6605, subd. (a).) An annual petition for conditional release pursuant to section 6608 must be calendared unless the committee affirmatively waives his or her right to such petition. (§ 6605, subd. (b).) Additionally, a committee may petition the court for a conditional release. (§ 6608, subd. (a).) After a hearing pursuant to section 6608, the court may release a committee to be placed in an "appropriate forensic conditional release program" which includes "outpatient supervision and treatment." (§ 6608, subd. (d).) A petition for conditional release may also be made by the State Department of Mental Health. (§ 6607, subd. (a).)

B. *The Attorney General of the United States may defer deportation proceedings in favor of a SVP Act petition.*

██ The People contend that the order dismissing the SVP Act petition was premature because it is speculative as to whether Perez will be deported should he be released to the community for outpatient treatment since the Attorney General of the United States (Attorney General) has the discretion to defer deportation proceedings in favor of allowing such treatment.

Special agent Porter's testimony, fairly read, supports a finding that "criminal aliens" such as Perez ordinarily would be deported if released to the community. However, Porter was not asked, and thus expressed no opinion, as to whether deportation proceedings could, or would, be deferred if an outpatient treatment program was made available to Perez at the time of his release to the community. We conclude, therefore, that Porter's testimony provides little, if any, support for the contention that Perez's deportation is mandatory.

Perez does not rely solely on Porter's testimony. Perez points out that he has been convicted of numerous counts of sexual abuse of a minor, and of lewd assault. Under the Immigration and Nationality Act (8 U.S.C.A. § 1101 et seq.), such offenses constitute "aggravated" felonies. (8 U.S.C.A. § 1101(a)(43)(A), (F).) The legal significance of an alien's conviction for an aggravated felony is that he or she is conclusively presumed to be deportable. (8 U.S.C.A. § 1228(c).) The Attorney General is required to initiate proceedings against an alien convicted of an offense which renders him or her deportable as "expeditiously as possible after the date of the conviction."

(8 U.S.C.A. § 1229(d)(1).) In addition, the alien is unable to apply for cancellation of removal proceedings (8 U.S.C.A. § 1229b(a)), is subject to "expedited" removal (8 U.S.C.A. § 1228(a)(3)(A)), and is permanently barred from returning to the United States (8 U.S.C.A. § 1182(a)).[2]

The foregoing regulations strongly suggest that Perez would be deported if ever released to the community. However, *Reno v. American-Arab Anti-Discrimination Comm.* (1999) 525 U.S. 471 [119 S.Ct. 936, 142 L.Ed.2d 940] (*Reno*) makes clear that the Attorney General has the discretion to defer Perez's deportation in order to provide him an opportunity for outpatient treatment pursuant to the SVP Act.

In *Reno*, resident aliens filed suit claiming that they had been targeted for deportation because of their affiliation with a politically unpopular group, in violation of their First and Fifth Amendment rights. (*Reno, supra,* 525 U.S. at pp. 472-474 [119 S.Ct. at pp. 938-939].) While their suit was pending, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which contains section 1252(g) (Section 1252(g)). (525 U.S. at pp. 472-473 [119 S.Ct. at p. 938].) Section 1252(g) provides as follows: "Exclusive Jurisdiction. [¶] Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." (8 U.S.C.A. § 1252(g).) The *Reno* court concluded that in those instances where an alien files an action challenging a decision or action by the Attorney General which falls within the three discrete actions listed in Section 1252(g), Section 1252(g) strips the federal district court of jurisdiction over the alien's action. (*Reno, supra,* 525 U.S. at p. 482 [119 S.Ct. at p. 943].)

The Supreme Court's description of Section 1252(g)'s purpose and why Congress would focus on the three discrete actions listed in Section 1252(g) is instructive. The Supreme Court explained that "[t]here was good reason for Congress to focus special attention upon, and make special provision for, judicial review of the Attorney General's discrete acts of 'commenc[ing] proceedings, adjudicat[ing] cases, [and] execut[ing] removal orders'—which represent the initiation or prosecution of various stages in the deportation process. At each stage the Executive has discretion to abandon the endeavor, and at the time IIRIRA was enacted the INS had been engaging in a regular

---

[2]Perez notes that he is also subject to deportation because he has been convicted of a crime of moral turpitude (8 U.S.C.A. § 1182(a)(2)(A)(i)(I)), and because he has been convicted of two or more offenses. (8 U.S.C.A. § 1182(a)(2)(B).)

practice (which had come to be known as 'deferred action') of exercising that discretion for humanitarian reasons or simply for its own convenience. As one treatise describes it: [¶] 'To ameliorate a harsh and unjust outcome, the INS may decline to institute proceedings, terminate proceedings, or decline to execute a final order of deportation. This commendable exercise in administrative discretion, developed without express statutory authorization, originally was known as nonpriority and is now designated as deferred action. A case may be selected for deferred action treatment at any stage of the administrative process. Approval of deferred action status means that, for the humanitarian reasons described below, no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated.' [Citations.] Since no generous act goes unpunished, however, the INS's exercise of this discretion opened the door to litigation in instances where the INS chose *not* to exercise it. [¶] '[I]n each such instance, the determination to withhold or terminate deportation is confined to administrative discretion. . . . Efforts to challenge the refusal to exercise such discretion on behalf of specific aliens sometimes have been favorably considered by the courts, upon contentions that there was selective prosecution in violation of equal protection or due process, such as improper reliance on political considerations, on racial, religious, or nationality discriminations, on arbitrary or unconstitutional criteria, or on other grounds constituting abuse of discretion.' [Citation.] Such litigation was possible because courts read [section] 1105a's prescription that the Hobbs Act shall be 'the sole and exclusive procedure for the judicial review of all final orders of deportation' to be inapplicable to various decisions and actions leading up to or consequent upon final orders of deportation, and relied on other jurisdictional statutes to permit review. [Citations.] Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." (*Reno, supra,* 525 U. S. at pp. 483-485 [119 S.Ct. at pp. 943-944], fns. omitted.)

Perez argues that *Reno* is inapplicable because the aliens in that case were not "criminal aliens," and their deportation was "discretionary" rather than "mandatory." *Reno* cannot be read so narrowly. It holds that the Attorney General has the nonreviewable discretion to defer any action on any deportation proceeding for humanitarian reasons or for its own convenience. This is true even though Perez is conclusively presumed to be deportable (8 U.S.C.A. § 1228(c)), and the Attorney General has an obligation to

begin deportation proceedings as expeditiously as possible. (8 U.S.C.A. § 1229(d)(1).)[3]

Here, the Attorney General has legally deferred action of Perez's deportation in favor of proceeding under the SVP Act even though Perez is no longer confined in state prison as a criminal. Should Perez ever meet the criteria for conditional release (a subject of mere speculation at this time), it is an open question whether the Attorney General, at that time, would consider deferring action on deportation pending the completion of treatment under a conditional release program. It is possible—given the nature of Perez's crimes—that the Attorney General would consider such a deferment. The alternative would be to deport Perez, untreated, to Mexico. Left untreated, his mental condition could cause him to resume his attacks on young children in Mexico, or return illegally to this country and attack children here. INS special agent Porter testified, essentially, that the Attorney General would defer action on Perez's deportation proceedings in favor of the SVP Act petition. In other words, the INS would allow Perez the benefit of psychiatric help rather than deport a sexually violent predator to Mexico. Porter also testified that should Perez be released to the community the detainer would be reinstated and removal proceedings would commence. While Porter's testimony provides some evidence that Perez may not be allowed to participate in a conditional release program at some time in the future, it is not the last word on the subject.

We conclude that because the Attorney General has the nonreviewable discretion to defer deportation proceedings in favor of a SVP petition, the order dismissing the petition filed against Perez was premature—because it is speculative whether Perez will be deported should he be released to the community to be treated on an outpatient basis.

C. *The SVP Act is fair and nondiscriminatory on its face, and no evidence of intentional or purposeful discrimination against Perez individually has been presented.*

■ The People contend that the Attorney General acted legally in deferring deportation proceedings against Perez pending the outcome of the

[3]Title 8 United States Code Annotated section 1229(d)(1) was formerly numbered as section 1252(i). In 1994, Congress passed the Immigration and Nationality Technical Corrections Act which added the language now contained in 8 United States Code Annotated section 1229(d)(1). (*Campos v. I.N.S.* (9th Cir. 1995) 62 F.3d 311, 313.) This language was added to overturn Ninth Circuit law which allowed individuals in Perez's position to seek mandamus relief in order to expedite deportation proceedings. (*Id.* at p. 314.) Section 1252(g) specifically precludes such pretrial relief to overturn the Attorney General's decision to defer action on the commencement of deportation proceedings.

SVP Act petition, and that this action did not purposefully and intentionally single out Perez for disparate treatment under the SVP laws.

■    The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." (See also Cal. Const., art. I, § 7, subd. (a).) "Equal protection" requires that persons similarly situated receive equal treatment. (8 Witkin, Summary of Cal. Law (9th ed. 1998) Constitutional Law, § 593, p. 44.) Three methods exist for establishing and testing classifications of a statute under the equal protection clause, "on its face," in its "application," and in "purpose and effect." (3 Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure (2d ed. 1992) § 18.4, p. 41.) A statute which establishes a classification "on its face" means that the law by its own terms classifies persons for different treatment. (*Id.* at p. 42.) A statute is tested in its "application" when it "either shows no classification on its face or else indicates a classification which seems to be legitimate, but those persons challenging the legislation claim that the governmental officials who administer the law are applying it with different degrees of severity to different groups of persons who are described by some suspect trait." (*Ibid.*) Thirdly, the "law may contain no classification, or a neutral classification, and be applied evenhandedly. Nevertheless the law may be challenged as in reality constituting a device designed to impose different burdens on different classes of persons." (*Ibid.*)

■    State discrimination against legal immigrants is a classification subject to heightened scrutiny. (*Graham* v. *Richardson* (1971) 403 U.S. 365, 372 [91 S.Ct. 1848, 1852, 29 L.Ed.2d 534].)

■    Perez concedes that the SVP Act vis-à-vis an individual's immigration status does not "on its face" create a suspect classification. He claims, however, that in its "application" and "purpose and effect" the SVP Act in his case denies him equal protection of the laws.

Since the SVP Act is fair and nondiscriminatory on its face concerning alienage, state action against Perez can result in a violation of equal protection only if the action results in purposeful or intentional discrimination. ■    " 'Unequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement.' [Citation.] Unequal application of a statute or rule to persons entitled to be treated alike is not a denial of equal protection 'unless there is shown to be present in it an element of intentional or purposeful discrimination.' [Citation.] What the equal protection guarantee

prohibits is state officials 'purposefully and intentionally singling out individuals for disparate treatment on an invidiously discriminatory basis.' [Citation]." (*Cilderman* v. *City of Los Angeles* (1998) 67 Cal.App.4th 1466, 1470 [80 Cal.Rptr.2d 20] [in which the respondent complained of uneven application against him of a Los Angeles County Civil Service Commission rule].)

■ Perez, citing *People* v. *Hernandez* (1970) 10 Cal.App.3d 646 [89 Cal.Rptr. 192], claims that the SVP Act, as it is applied to him, violates equal protection because the state action involved is the result of purposeful or intentional discrimination. In *Hernandez*, the defendants complained that they were precluded from participating in drug rehabilitation programs because the courts illegally considered their status as aliens. The Court of Appeal agreed. "[P]ending deportation would clearly relate to the party's 'fitness for "confinement or treatment in a rehabilitation facility,"' . . . since the program depends on continued availability for treatment. Also pending deportation would [a]ffect the party's ability 'to participate either in the educational or therapeutic programs at the rehabilitation center,' . . . since obviously defendant would not be able to participate in programs at the rehabilitation center when he is deported. The rehabilitation program contemplates an extended period of institutional and outpatient treatment. The law contemplates a seven-year commitment, and a minimum of six months spent as an inpatient, with the addict then being placed on outpatient status . . . and pending deportation makes this program impossible." (*Id.* at p. 649.)

Unlike the defendants in *Hernandez*, Perez complains that the People seek to place him in a rehabilitation program without considering his status as an alien. As previously discussed, it is an open question whether the Attorney General would defer initiating deportation proceedings against Perez should Perez become eligible—at some future date—for outpatient treatment.

Perez next claims that the "purpose and effect" of the SVP Act constitutes a device designed to impose different burdens on different classes of persons. In support of his contention, Perez again asserts that because it is "legally impossible for deportable aliens to complete" outpatient treatment, he, unlike United States citizens, will never be afforded an opportunity to become fully rehabilitated. He once again concludes that he has been singled out for disparate treatment under the SVP Act. As previously discussed, since the Attorney General has the unreviewable discretion to defer any deportation proceedings which may—at some future date—be initiated against Perez, it is an open question whether he will be allowed to be released to the community to participate in an outpatient program.

We hold that neither the action of the People in filing the SVP Act petition nor the decision of the federal government to defer action on Perez's deportation pending the outcome of the petition have resulted in invidiously discriminatory disparate treatment under the otherwise neutral SVP Act. We conclude, therefore, that the superior court erred in dismissing the SVP Act petition filed against Perez.

## DISPOSITION

Let a writ of mandate issue directing the superior court to set aside its order granting real party's motion to dismiss, and to issue a new and different order denying the motion. The order to show cause is dismissed.

Nott, J., and Zebrowski, J, concurred.