[Crim. No. 11842.    Second Dist., Div. Four.    Sept. 28, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. ARTHUR EDWARD MARQUEZ, Defendant and Appellant.

T. Anthony Sanfilippo, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Jackson L. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged by indictment with the sale of heroin, in violation of section 11501 of the Health and Safety Code. Trial by jury was duly waived and the matter was submitted on the transcript of the testimony before the grand jury, supplemented by additional oral testimony. Defendant was found guilty as charged. Pursuant to

then section 6451 of the Penal Code,[1] the criminal proceedings were suspended and proceedings looking toward defendant's commitment to the California Rehabilitation Center were begun. Those proceedings resulted in a finding that defendant was addicted to heroin, and an order of commitment was made. Seventeen and one-half months later, the Director of Corrections, purportedly acting under then section 6453 of the Penal Code,[2] certified that defendant was not a fit subject for confinement or treatment. Defendant was returned to the superior court, the commitment proceeding was terminated and the criminal proceedings resumed. A new probation report was ordered and, after hearing, probation was denied and a state prison sentence was imposed. Defendant appealed in propria persona and, at his request, we appointed counsel for him on this appeal.

In the brief filed on behalf of defendant, appointed counsel contends: (1) that the evidence does not support the judgment; and (2) that defendant was denied a fair trial, in that the prosecution suppressed material evidence. It appears from the record before us that defendant had stated in an application to the trial court for a record on appeal that he intended to raise additional points, which we may summarize as follows: (1) that Penal Code section 6453 is unconstitutional; (2) that the Director of Corrections abused his discretion in rejecting defendant from the rehabilitation program; and (3) that the trial court erred in rejecting these contentions.

I

We can find nothing in the record before us to indicate that these latter contentions were ever made in the trial court or that the trial court ever ruled thereon. However, because they raise important questions in the construction and administration of the Narcotic Rehabilitation Act, we deem it proper to comment on them.

II

So far as we can discover, the constitutionality of the provision in section 6453 of the Penal Code has never been expressly raised or decided, except insofar as the entire statute was considered and sustained in *In re De La O* (1963) 59 Cal.2d 128 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]. Certainly the validity of that section was inferred and implied

---

[1] Now Welfare and Institutions Code section 3051.
[2] Now Welfare and Institutions Code section 3053.

in the cases construing it (*People* v. *Rummel* (1966) 64 Cal.2d 515 [50 Cal.Rptr. 785, 413 P.2d 673]; *In re Swearingen* (1966) 64 Cal.2d 519 [50 Cal.Rptr. 787, 413 P.2d 675]; *In re Rascon* (1966) 64 Cal.2d 523 [50 Cal.Rptr. 790, 413 P.2d 678]).

We can see no reason why the provisions of section 6453 are not constitutional. In an attempt to provide a workable program and one within the bounds of the state's ability to provide, the statutory scheme provides four screens for eligibility: (a) the Legislature itself has withheld from eligibility those previously convicted of certain criminal offenses (former Pen. Code, § 6452, now Welf. & Inst. Code, § 3052); (b) the legislative elimination may, "in unusual cases" be disregarded if both the judge in the criminal case and the district attorney so determine (former Pen. Code, § 6451, now Welf. & Inst. Code, § 3051); (c) in cases not covered by the legislative elimination, the judge in the criminal proceedings must determine whether the defendant is not a fit subject for commitment; and (d) finally, the Director of Corrections, after a minimum of 60 days of observation and testing, makes a final determination of fitness.

It will be noted that the determination of eligibility by the judiciary is, thus, not only tentative and subject to review by the Director of Corrections and his staff, but that the judicial decision is cast in terms of a negative—that is to say, the judge institutes commitment proceedings "unless in [his] opinion . . . the defendant's record and probation report indicates such a pattern of criminality that he does not constitute a fit subject for commitment. . . ." (Welf. & Inst. Code, § 3051, formerly Pen. Code, § 6451.) But the judge has no expertise to decide, and the statute does not assume that he will decide, that the defendant, in fact, is a fit subject for commitment and treatment, judged either by his past record or by his ability (for reasons either of character, intelligence or aptitude) to respond to treatment; the judicial decision is merely that, as far as the court's limited knowledge about defendant, and the judge's nonexpert opinion, permit, it is worthwhile to try the rehabilitation program in his case.

But whether or not any given defendant can be treated with success is a fact which, in the last analysis, must be determined not by judges but by people trained in that field and actually engaged in the treatment process. Hence, out of practical necessity, the statute leaves to the professional

experts the final decision on whether or not treatment should be begun or be continued.[3]

While the program is partly for the protection of the addict, its primary purpose is "the prevention of contamination of others and the protection of the public." (Welf. & Inst. Code, § 3000, formerly Pen. Code, § 6399.) It follows that the Legislature could validly leave to the decision of the informed experts the final determination of the question of whether or not the treatment process could be continued with profit. Since a defendant has no absolute right to treatment under the program, the Legislature may make continuance of treatment conditional on any reasonable criterion, determined by such agency as it may reasonably select.

## III

By section 6453 of the Penal Code,[4] as that section read at the time herein involved, the Director of Corrections was authorized to return a person to the court conducting criminal proceedings whenever he concludes "that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in" the program. The court, for the reasons just discussed, may not review a return based on a ground which, in law, is relevant. In the case at bench, the return was based, as the record discloses, on the failure of defendant when released on outpatient status, on his marginal intelligence, and on his unwillingness or inability to participate either in the educational or the therapeutic programs at the rehabilitation center. These reasons obviously are "relevant" within the meaning of the statute; whether or not they were so serious as to require rejection from the program was, as we have said, for the director and not for the court.

## IV

The contention that the evidence does not support the judgment is without merit. The police officer testified that, after some preliminary activities hereinafter discussed, he asked defendant, "Man, where the hell is my stuff at?" and

---

[3]For obvious constitutional reasons, an arbitrary refusal of the director to release from the program an addict in fact rehabilitated is reviewable on habeas corpus. (See *In re De La O* (1963) 59 Cal.2d 128, 141-143 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705].) But this sheds little light on the converse situation, herein involved, wherein it is contended that the director released when he should not.

[4]Now Welfare and Institutions Code section 3053.

that defendant "picked up a bindle and said, 'Here it is, but take it easy, this stuff is really it.'" The bindle thus delivered contained heroin. Clearly, this was enough to prove defendant's participation in what, it is admitted, was a sale of heroin to the officer by someone.

## V

■ The claim of an unfair trial is premised on the following facts: In testifying before the grand jury, the undercover officer testified that "another person" and the officer met a Mexican identified as "John Doe Cheppo" and initiated a purchase transaction. The officer, at Cheppo's direction, followed Cheppo to a house, the address of which was given, where they met Ysidro Lozano. Lozano and Cheppo drove off. When they had not returned after an hour, the officer had a conversation with defendant, as a result of which the officer and defendant went to look for Lozano and Cheppo. They found them in a stalled car, got the car started and returned to the house. Lozano and Cheppo went into the house. After a brief wait, the officer knocked on the door, which was answered by defendant. Defendant told the officer (in effect) that Cheppo had taken an overdose and was "in bad shape." The officer and Lozano partially revived Cheppo, whereupon the officer asked for his "stuff" and, as above related, a bindle of heroin was delivered to the officer by defendant. The officer was asked: "Now, as I understand it, Mr. Medina, when John Doe Hobo [defendant] gave you the bindle, Lozano and John Doe Cheppo were present in the room?" The officer answered, "That's correct." The officer also testified to two other narcotic purchases, neither of which involved defendant. At the conclusion of his testimony, the following questions were asked by the deputy district attorney and the following answers were given: "Q. As I recall it, you said another person was present during the course of two transactions. If an indictment were returned in this case, are you willing to identify that other person in the Superior Court? A. Yes, sir, I am."

When Officer Medina was called for further examination at the trial, he gave the name of the "other person" (Chavez) and it developed that Chavez had been present throughout the entire series of events, including the delivery of the narcotics by defendant.

As we understand it, the contention is that, since defendant had no opportunity to cross-examine the officer before the grand jury, it was prejudicial for that examination not to

have affirmatively disclosed the extent of Chavez' participation in the sale. Defendant contends that he was led to believe that Chavez had done no more than introduce Medina to Cheppo, and therefore was not a "material" witness to the delivery and, thus, not worth interrogation by defense counsel.

The argument is ingenious, but invalid. The People were required to do no more than to make out a prima facie case before the grand jury; they were not required to disclose all of their evidence. It cannot be said that, by asking specifically if Lozano and Cheppo were present at the delivery, the prosecutor created any inference that only they were present. The People sought, and obtained, an indictment against both of those named, so that their presence was a necessary fact to be proved; the officer was not asked to name all those present and we see no reason why he should have been asked.

Furthermore, we think defendant and his counsel were warned that Chavez was, in fact, a participant witness. The prosecutor had expressly brought out the willingness of the prosecution to give the informer's name if requested. But, since no issue of probable cause was present, such disclosure was required only if the anonymous "other person" were a material witness. The offer was its own indication to the defendant that the informer might have been involved in the actual sale and delivery. But no pretrial motion for discovery of the informer's name was made, nor did defendant, after discovery of the name and of his alleged participation, seek any continuance[5] or make any other claim of prejudice. Under the circumstances, we can see no ground for reversal.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied October 18, 1966, and appellant's petition for a hearing by the Supreme Court was denied November 23, 1966.

---

[5] A continuance was sought, and denied, but merely to secure certain jail records which the trial court, correctly, ruled where immaterial.