[Crim. No. 11670.   Second Dist., Div. Two.   Jan. 25, 1967.]

THE PEOPLE, Plaintiff and Respndent, v. EDWARD HANNAGAN, Defendant and Appellant.

Henry P. Crabtree, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Bechefsky, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—On January 11, 1962, appellant pleaded guilty to one of two counts of an information charging violations of section 11501 of the Health and Safety Code. On January 31, 1962, the criminal proceedings were suspended. Pursuant to then Penal Code, section 6451 (now Welfare & Inst. Code, § 3051) appellant was referred to department 95 of the superior court to determine his suitability for commitment to the narcotics rehabilitation program. On February 7, 1962, appellant was certified for further proceedings in accordance with Welfare and Institutions Code, section 3051.

The court said: "Mr. Hannagan, I have been advised that there are facilities available in the Department of Corrections for you if I certify you to Department 95 for further proceedings. I am going to do that. I am going to certify you . . . pursuant to Section 6451 of the Penal Code for examination on the question of narcotic addiction. The order is signed and you are certified over there."

The minute order reflecting the proceedings includes the statement ". . . criminal proceedings are now adjourned."

Appellant spent the next three and one-half years in various levels of treatment under the narcotics rehabilitation program. On July 26, 1965, a letter signed "Roland W. Wood, Superintendent," of the Department of Corrections, California Rehabilitation Center at Corona was addressed to and received by the presiding judge of department 95 of the superior court, Los Angeles County. In pertinent part, the letter states:

"Pursuant to the provisions of Penal Code Section 6453 and the authority granted me by the Director of Corrections under Penal Code Section 5055, I hereby certify that Edward

Hannagan is not a fit subject for confinement or treatment in the California Rehabilitation Center. This referral to the Court is based on his continuing acts of violence as outlined below and apparent inability to benefit from this program.''

On September 15, 1965, criminal proceedings were reinstituted at the point at which they were adjourned on February 7, 1962. Appellant was sentenced to state prison.

Appellant contends on this appeal that: (1) the trial court was without power to reassume criminal jurisdiction; (2) his rejection from the narcotics program was improper; (3) failure to give him a judicial hearing on his rejection violated due process. He asks that he be returned to the superior court for appropriate commitment under the rehabilitation program or, in the alternative, that the criminal proceedings be dismissed.

Section 3051 of the Welfare and Institutions Code[1] provides that upon conviction of a defendant for any crime, if it appears that he may be addicted to, or in imminent danger of addiction to narcotics, the trial judge ''shall adjourn the proceedings or suspend the imposition of the sentence'' in order that it may be determined whether a defendant is addicted and suitable for treatment in a narcotic detention facility.

Section 3053 provides that if at any time after 60 days following receipt of a defendant at a narcotics facility the Director of Corrections determines that a defendant is not a fit subject for confinement or treatment in such facility, he may return defendant to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted.

This procedure was followed here. Appellant contends, however, that since the specific reference to either ''adjourning'' or ''suspending'' criminal proceedings appears in the minute order only and does not appear in the statement of the trial judge as heretofore excerpted from the reporter's transcript, the original trial court could not reassume criminal jurisdiction even after a justifiable return of appellant, as contemplated by section 3053. As we understand appellant's point, it is that the words ''criminal proceedings are now adjourned'' which are contained in the minute order, were not uttered by the trial judge, and because of this omission, the proceedings are so defective that the court has lost jurisdiction.

---

[1]All statutory citations are to the Welfare and Institutions Code, unless otherwise indicated.

*People* v. *Moreno,* 235 Cal.App.2d 386, fn. 1 [45 Cal. Rptr. 243], holds that an order adjourning or suspending criminal proceedings divests the criminal court of jurisdiction of a case, but only until such time as the defendant is properly returned to that court under section 3053. ■ To retain jurisdiction, the incantation of statutory language by a trial judge is not important. It is important for the record to make clear that the statutory procedure is being followed. The statement of the court, the minute order, and the proceedings which followed, demonstrate what the court *did.* Appellant was not prejudiced by the failure of the judge to use statutory language when orally indicating that he was making a reference as permitted by section 3051. The provisions for rehabilitative treatment of narcotic offenders are intended to provide, where possible, a corrective alternative to confinement in prison; they make no change in the law which makes possession or sale of narcotics a criminal offense.

Appellant also challenges the validity of his rejection from the rehabilitation program. He contends first that the statutory standard for rejection referred to in the letter, to wit: "because of excessive criminality or for other relevant reason," is unconstitutionally vague.[2] The letter, however, does not merely use the phrase. It consists of three pages and sets forth probative facts which fully justify the quoted phrase in characterizing appellant's fitness for the program.

■ The quoted phrase does not give unbounded discretion to the director to reject a person from the program. The "other reason," to be "relevant," must relate to his fitness for "confinement or treatment in a rehabilitation facility." (See *In re Swearingen,* 64 Cal.2d 519, 521 [50 Cal.Rptr. 787, 413 P.2d 675].) In *In re Rascon,* 64 Cal.2d 523, 528 [50 Cal. Rptr. 790, 413 P.2d 678], both the previous failure of a defendant to profit from a similar narcotics program and his "apparent lack of motivation for change" were sustained as other relevant reasons for his rejection.

The latest judicial interpretation of "relevant reason" appears in *People* v. *Marquez,* 245 Cal.App.2d 253 [53 Cal. Rptr. 854]. The court says at pp. 256-257:

---

[2]Section 3053 reads in full: "'If at any time after 60 days following receipt of a person at the facility, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted.'"

■ "But whether or not any given defendant can be treated with success is a fact which, in the last analysis, must be determined not by judges but by people trained in that field and actually engaged in the treatment process. Hence, out of practical necessity, the statute leaves to the professional experts the final decision on whether or not treatment should be begun or be continued.

"While the program is partly for the protection of the addict, its primary purpose is 'the prevention of contamination of others and the protection of the public.' (Welf. & Inst. Code, § 3000, formerly Pen. Code, § 6399.) It follows that the Legislature could validly leave to the decision of the informed experts the final determination of the question of whether or not the treatment process could be continued with profit. Since a defendant has no absolute right to treatment under the program, the Legislature may make continuance of treatment conditional on any reasonable criterion, determined by such agency as it may reasonably select.

"By section 6453 of the Penal Code, as that section read at the time herein involved, the Director of Corrections was authorized to return a person to the court conducting criminal proceedings whenever he concludes 'that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in' the program. The court, for the reasons just discussed, may not review a return based on a ground which, in law, is relevant. In the case at bench, the return was based, as the record discloses, on the failure of defendant when released on out-patient status, on his marginal intelligence, and on his unwillingness or inability to participate either in the educational or the therapeutic programs at the rehabilitation center. These reasons obviously are 'relevant' within the meaning of the statute; whether or not they were so serious as to require rejection from the program was, as we have said, for the director and not for the court."

■ "Excessive criminality" is one basis for a finding of unsuitability. "Other relevant reason," clearly, is a distinct and broader additional basis and does not, as appellant contends, merely modify "excessive criminality." (See *People* v. *Pate*, 234 Cal.App.2d 273, 274 [44 Cal.Rptr. 462].)

■ The statute in question does not deal with speed limits or other traffic violations which can frequently be defined with mathematical certainty. In situations such as the one before us there is a need for standards flexible enough to allow effec-

tive operation of the program from the point of view of both the Department of Corrections and the persons committed to its care. The language quoted is clear enough to provide the "reasonable certainty" of definiteness required to comport with due process. (See *People* v. *Victor,* 62 Cal.2d 280, 298-301 [42 Cal.Rptr. 199, 398 P.2d 391], where the phrase "in imminent danger of becoming addicted" was upheld against an attack of unconstitutional vagueness.) The language used by the Supreme Court in *People* v. *Victor, supra,* at p. 300, in discussing the phrase "imminent danger" applies equally well here: "It follows . . . that the presence of an element of degree in the definition of 'imminent danger' does not of itself render the statutory language insufficiently certain to comply with due process. ' "Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language." [Citation.] It will be upheld if its terms may be made reasonably certain by reference to other definable sources.' (*American Civil Liberties Union* v. *Board of Education* (1963) 59 Cal.2d 203, 218 [28 Cal.Rptr. 700, 379 P.2d 4].)''

▉ Appellant contends further that even if the statutory standard is valid, the letter from Mr. Wood does not solidly indicate a basis for finding either excessive criminality or other relevant reason which could support his rejection from the program. We have already stated that it does.

In a brief summary, the letter states that appellant has an alcoholic problem and a violent temper which is aggravated by the use of alcohol. He served a Youth Authority commitment for assault with a deadly weapon and burglary and was arrested on other occasions for assault and armed robbery. While in the program, he reported drunk to the nalline testing center, fought with agents there, and threatened to "whip" one of the agents. When on out-patient status on the express condition that he totally abstain from alcohol, and after warning that his continued drinking would necessitate rejection from the program, he continued to drink, disappeared for two days, was found badly beaten and unconscious on the floor of his parents' home after a fight. He also attempted suicide.

Conceding that appellant was originally accepted into the program with knowledge of his criminal record, and his severe alcoholic problem, it is clear that his repeated acts of violence continuous while in the program, coupled with complete fail-

ure to cooperate, and in addition, his suicidal tendencies, and repeated insubordinations, could reasonably be found by the director to be "relevant reasons" for his rejection from the program, independent of any question of "excessive criminality."

Appellant's assumption that section 3000 requires that he be kept in the program is erroneous. The section provides, in part: "Persons committed to the program provided for in this chapter who are uncooperative with efforts to treat them or are otherwise unresponsive to treatment nevertheless should be kept in the program for purposes of control." This section, however, does not contradict the provisions dealing with grounds for rejection but, rather, expresses the intent that those who are merely uncooperative or unresponsive are not necessarily "unfit." There is an important difference between an uncooperative or unresponsive person and one who is excessively criminal, or who, as appellant, is alcoholic, violent and suicidal. An unresponsive person simply does not benefit from the program in overcoming his narcotics problem. A defendant who, by his behaviour, makes it difficult or impossible to deal with other persons in the program, not only does not benefit, but his presence is inimical to the orderly operation of a rehabilitative facility.

Appellant's final contention is that he did not have the opportunity to dispute the contents of the director's letter and that therefore he suffered a denial of due process.

Section 3053 provides that in the event a person shall be deemed not a fit subject for the program, he shall be returned to the court in which the case originated "for such further proceedings on the criminal charges as that court may deem warranted." No specific provision is made for a hearing to challenge the propriety of the rejection. (Compare with the hearing provisions of sections 3050 and 3051.) We assume, however, that the section in question implicitly gives any defendant such a right.

At bench, when appellant was returned to the court on September 15, 1965, the trial judge briefly summarized the history of the case and the contents of the letter from the Department of Corrections. He then asked whether there was any legal cause why judgment should not be pronounced. Appellant's attorney answered affirmatively and despite the fact that the time spent in rehabilitation is credited against the prison sentence (*People* v. *Moreno, supra,* at p. 389), made a lengthy argument concerning the double jeopardy of sentencing appel-

lant to state prison after three and one-half years in the rehabilitation program. The court rejected the argument. (See *People* v. *McCuiston,* 246 Cal.App.2d 799, 807 [55 Cal.Rptr. 482].) Appellant then asked that he be sent to an honor farm. The court denied the request and sentenced appellant to prison.

At no point did appellant attempt to dispute the accuracy or sufficiency of the letter or the propriety of his rejection from the program. When the court asked whether there was legal cause why judgment should not be pronounced, appellant had the opportunity to challenge the letter. He did not nor did he make any attempt to question its assertions.

Sections 3050 and 3051 both specifically provide for a hearing at a dissatisfied person's request into the propriety of a court's orders in regard to commitment under the program. Section 3053 does not expressly provide for this hearing, but it has a built-in safeguard of due process rights: a court must hold ''a hearing'' to reassume criminal jurisdiction and as above, will ask whether legal cause exists; challenges to the propriety of rejection may be made at this time. In *People* v. *Pate,* 234 Cal.App.2d 273, 276 [44 Cal.Rptr. 462], it was held that the trial court has the power to review the action of the director.

We do not have a situation where a challenge to the contents of the letter was made and the opportunity to air its assertions was refused.

The judgment and order sentencing appellant to state prison is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied February 24, 1967, and appellant's petition for a hearing by the Supreme Court was denied March 22, 1967.