[Crim. No. 18987. Second Dist., Div. Four. Sept. 20, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSE FULLER, Defendant and Appellant.

160

## COUNSEL

Michael Friedman, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Donald J. Oeser, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—On October 11, 1968, information number A-236816 was filed against defendant, charging him with possession for sale of a narcotic, in violation of section 11500.5 of the Health and Safety Code. On December 2, 1968, information number A-238289 was filed against defendant, charging him with two counts of unlawfully selling, furnishing and giving away a narcotic, in violation of section 11501 of the Health and Safety Code. Each information alleged six prior felony convictions. Defendant pled guilty to count I of the second information and guilty to the offense charged in the first information. Determination of all priors and count II of the second information was continued to the time set for the probation and sentence hearing. Criminal proceedings were adjourned and defendant was referred to department 95, pursuant to the provisions of section 3051 of Welfare and Institutions Code. On April 3, 1969, after

a finding that defendant was a narcotic drug addict, he was committed to the California Rehabilitation Center. The People waived the provisions of section 3052 of the Welfare and Institutions Code. Count II of the second information was dismissed and all alleged prior convictions were stricken.

On October 11, 1969, a letter from the California Rehabilitation Center informed the court that defendant was not a suitable subject for the program, giving as its basis for rejection defendant's "excessive criminality." After hearing on the matter, the court found that the superintendent of the California Rehabilitation Center had not abused his discretion in rejecting defendant.

Probation was denied and defendant was sentenced to prison for the term prescribed by law.

As defendant pled guilty, there was no evidence taken on the issue of guilt. The only evidence presented was directed to the issue of whether the Superintendent had abused his discretion in rejecting defendant.

## I

Defendant contends that the phrase "excessive criminality" as used in section 3053 of the Welfare and Institutions Code is unconstitutionally vague and violates the due process and equal protection clauses of the United States Constitution and the California Constitution.[1]

These issues were raised in *People* v. *Hannagan* (1967) 248 Cal.App.2d 107 [56 Cal.Rptr. 429], and *People* v. *Marquez* (1966) 245 Cal.App.2d 253 [53 Cal.Rptr. 854], and decided in favor of constitutionality. These cases held that the quoted phrase "because of excessive criminality or other relevant reason" is not vague and does not give unbounded discretion to the Director of Corrections to reject a person from the rehabilitation program. In *People* v. *Marquez, supra,* at page 256, we stated:

"We can see no reason why the provisions of section 6453[2] are not constitutional. In an attempt to provide a workable program and one within the bounds of the state's ability to provide, the statutory scheme provides four screens for eligibility: (a) the Legislature itself has withheld from

---

[1] The language of section 3053 is as follows: "If at any time following receipt at the facility of a person committed pursuant to this article, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted."

[2] Now Welfare and Institutions Code section 3053.

eligibility those previously convicted of certain criminal offenses (former Pen. Code, § 6452, now Welf. & Inst. Code, § 3052); (b) the legislative elimination may, 'in unusual cases' be disregarded if both the judge in the criminal case and the district attorney so determine (former Pen. Code, § 6451, now Welf. & Inst. Code, § 3051); (c) in cases not covered by the legislative elimination, the judge in the criminal proceedings must determine whether the defendant is not a fit subject for commitment; and (d) finally, the Director of Corrections, after a minimum of 60 days of observation and testing, makes a final determination of fitness."

In situations requiring treatment and observation, the standards for retention must be flexible enough to permit the effective and efficient operation of the program in question. In this respect, the test of constitutionality is that of a reasonable certainty in the language employed. If a reasonable and practical construction can be given to the language of the statute, it will not be held void for uncertainty. (*People* v. *Hannagan, supra* (1967) 248 Cal.App.2d 107, 113; *People* v. *Victor* (1965) 62 Cal.2d 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391].) The language previously quoted is sufficiently clear to provide the "reasonable certainty" of definiteness required for due process. (*People* v. *Hannagan, supra,* at p. 113.)

In support of his position that section 3053 denies equal protection of the laws, defendant cites *Baxstrom* v. *Herold* (1966) 383 U.S. 107, 111 [15 L.Ed.2d 620, 623-624, 86 S.Ct. 760]. That case held that equal protection requires a statutory distinction which has at least some relevance to the purpose for which the classification is made. It is certainly reasonable to exclude from the rehabilitation programs those individuals with a background of "excessive criminality." Due to their criminal history, they may be less amenable to treatment, control and cooperation, and their very presence may involve danger to other participants. Furthermore, since a defendant has no absolute right to treatment under the program, the Legislature may make continuance of treatment conditional on any reasonable criterion determined by the appointed agency. (*People* v. *Meza* (1971) 14 Cal.App.3d 553, 557 [92 Cal.Rptr. 423]; *People* v. *Marquez, supra* (1966) 245 Cal.App.2d 253, at p. 257.) Accordingly, the legislative distinction must be sustained.

II

Defendant next urges that the superintendent abused his discretion in rejecting defendant from the program.

Pursuant to section 3053, a person may be excluded from the program because of "excessive criminality." This basis is alone sufficient. (*People* v.

*Hernandez* (1970) 10 Cal.App.3d 646, 649 [89 Cal.Rptr. 192]; *People* v. *Hannagan, supra* (1967) 248 Cal.App.2d 107, 112.)

■ The determination of the trial court in committing defendant to the Director of Corrections is not binding on the director or his staff. Whether or not an individual can be treated with success in a rehabilitation program is a fact which must be determined, in the last analysis, "not by judges but by people trained in that field and actually engaged in the treatment process. Hence, out of practical necessity, the statute leaves to the professional experts the final decision on whether or not treatment should be begun or continued." (*People* v. *Marquez, supra* (1966) 245 Cal.App.2d 253, 256-257; see also *People* v. *Hakeem* (1969) 268 Cal.App.2d 877, 882 [74 Cal.Rptr. 511].)

■ However, while the court cannot evaluate the significance of criminality on defendant's fitness for treatment, it can determine whether or not the criminality relied upon by the superintendent actually existed. In the instant case ample evidence of defendant's "excessive criminality" was before the court. In 1941 defendant was convicted of voluntary manslaughter; in 1946 he was convicted of forgery of endorsement; in 1949 he was convicted of burglary; in 1953 he was convicted of theft; in 1959 he was convicted of possession of a narcotic other than marijuana; and in 1964 he was convicted of the sale of heroin.

Defendant seeks to support his argument of abuse of discretion by reference to the testimony of Mr. Wainstock and Mr. Chamlee, his correctional counselors at the program. That testimony indicated a desire to retain defendant in the program. Both counselors testified that defendant's behavior was acceptable and that he could benefit from the program. Thus, the only evidence to support the rejection of defendant was the testimony of Mr. Sutliff, associate superintendent at the California Rehabilitation Center at Corona. Mr. Sutliff stated that the basis for defendant's exclusion was excessive criminality. Succinctly stated, defendant's claim is that the superintendent abused his discretion by ignoring the statements of his staff which were favorable to defendant. This same argument was made and rejected in *People* v. *Hakeem* (1969) 268 Cal.App.2d 877, 881-882 [74 Cal.Rptr. 511]. This court decided then that the determination to accept or reject a potential participant is vested by law in the Director of Corrections, and in his delegate, the superintendent. Consequently, while the staff reports should be considered, neither officer is bound by them.

Superintendent Woods, acting under the authority of the Director of Corrections, certified that defendant was not a fit subject for confinement and treatment because of "excessive criminality." Based on defendant's six

prior felony convictions, the trial court could properly conclude that there was no abuse of discretion.

### III

■ Defendant argues that either the superintendent abused his discretion or that he was denied due process of law when he was rejected from the rehabilitation program approximately six months after acceptance.

At the time defendant was committed to the California Rehabilitation Center, section 3053 of the Welfare and Institutions Code required the director to wait 60 days before rejecting a person from the program. While defendant was in the program, the statute was amended to eliminate the 60-day requirement. There is, however, no statute regulating the maximum period within which rejection or acceptance must be decided. The case cited by defendant, *People* v. *Gallegos* (1966) 245 Cal.App.2d 53 [53 Cal.Rptr. 663], is not in point as it involved a situation where defendant was rejected prior to the 60-day period. We can find no cases discussing the issue of "untimely" rejection or evaluation.

We need not discuss the hypothetical situation posed by defendant—that of a person rejected from a three-year program (because of "excessive criminality") one week before completion. In the instant case, after approximately five months' participation in the program, defendant still had further months to complete.

The evidence is clear that there was deliberation and discussion regarding retention of defendant and that the decision was acceptance and rejection at different times.

Before the 60-day retention requirement was enacted, complaints were made that the California Rehabilitation Center was rejecting people without giving them a trial in the program. It was because of these complaints that the requirement was imposed to keep persons for a minimum period of time. The fact that defendant was given an opportunity to participate and that there was debate regarding the final decision shows an exercise of discretion rather than an abuse of discretion. Furthermore, defendant has made no showing that he was harmed by the delay.

### IV

■ Finally, defendant contends that the trial court erred when it excused the superintendent from testifying, and that this act resulted in a denial of his constitutional right to confront witnesses. Mr. Wood, Superintendent of the California Rehabilitation Center, was subpoenaed by defendant to appear in court for the hearing on whether he had abused his

discretion in rejecting defendant. On the morning of the hearing, counsel for defendant, Mr. Gottesman, learned that Mr. Wood had been excused by the court, but that the associate superintendent was present to verify institutional records.

We can see no error. ■ As we have pointed out above, the only issue which the trial court could consider was whether, in fact, defendant's record showed criminality; whether or not the criminality justified defendant's rejection from the program was entirely in the judgment of the superintendent and that judgment was not subject to review by the trial court. ■ It follows that the only matter about which Superintendent Wood could have been examined was the factual existence of criminality. But that fact was a matter of official record and, if testimony that those records were before the superintendent was required, the associate superintendent was equally competent to testify as to the contents of the institutional records relating to defendant.

The judgment is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.