[Crim. No. 25452. Second Dist., Div. Five. Mar. 6, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
HARRY BLACKWELL, JR., Defendant and Appellant.

**COUNSEL**

Ardith V. Javan, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, J.**—In 1965 appellant was convicted of two counts of selling heroin and one count of selling a substance in lieu of heroin, in superior

court case number 288780. On January 7, 1966, he was sentenced to be imprisoned in the state prison on that case, but he remained free on bail pending appeal. In July 1967, while the appeal in that case was still pending, appellant was charged in the instant case, number A 217758, with sale of heroin in violation of former Health and Safety Code section 11501. In a court trial he was found guilty of possession of heroin in violation of former Health and Safety Code section 11500, a lesser but necessarily included offense. Criminal proceedings were adjourned and appellant was committed as a drug addict pursuant to Welfare and Institutions Code section 3051.

In October 1968 the judgment of conviction in number 288780 was affirmed by the Court of Appeal. Since appellant had in the meantime been committed to the California Rehabilitation Center in number A 217758, the court in number 288780 vacated the sentence of imprisonment in the state prison and committed appellant pursuant to Welfare and Institutions Code section 3051.

In July 1973 the Superintendent of the California Rehabilitation Center excluded appellant because he was not a suitable subject for the program, and referred appellant back to the court for further proceedings pursuant to Welfare and Institutions Code section 3053. The superior court held a hearing in January 1974 on appellant's exclusion from the CRC. The court held that the superintendent did not abuse his discretion by excluding appellant from the program. The court sentenced appellant to be imprisoned in the state prison on number 288780 and number A 217758, such sentences to run concurrently.

Appellant filed notices of appeal "of the Judgement of the 3053 W & I Code Hearing Held January 4, 1974," and "of the Judgement of the 1967 case whereby the defendant was not formerly [sic] sentence [sic] until January 4, 1974 [No. A 217758]." As to the judgment of conviction appellant argues that the evidence established as a matter of law that he was entrapped to commit the offense. As to the Welfare and Institutions Code section 3053 hearing appellant argues that the court erred in upholding the superintendent's exclusion of appellant from the program.

These issues are properly raised on this appeal. Appellant could not previously have appealed as to the merits of the conviction since there was no final judgment until January 1974.[1] The order upholding the

---

[1] The present provision of Penal Code section 1237 which deems a commitment for narcotics addiction to be a final judgment for purposes of appeal did not yet exist in

superintendent's exclusion of appellant from the CRC may be reviewed on appeal from the judgment.

## SUBSTANTIVE OFFENSE

In number A 217758 appellant was charged with sale of heroin. The cause was submitted on the transcript of the preliminary hearing, plus additional testimony by appellant. The court found appellant guilty of possession of heroin, a lesser but necessarily included offense.

On December 13, 1966, Los Angeles Police Officer Lawrence J. Bohana was working undercover narcotics. He and an informant named Wellman Richards, Jr., were driving eastbound on Sixth Street near Stanford Street at 10 a.m. Appellant was standing on the corner of Sixth and Stanford and waved to the informant. Officer Bohana stopped the car, and appellant came up to the window and told the informant that he knew where he could get some real good stuff, meaning heroin. Appellant got in the back seat and told Officer Bohana to drive to Sixth and Towne, where he parked on the corner. The informant handed appellant $10 which had been provided by Bohana. Appellant got out and walked around the corner. He returned five minutes later, got into the back seat and handed a pink balloon to the informant. Appellant suggested that the three of them use some of it. The balloon was later analyzed to contain heroin.

Appellant testified in his own behalf that he had previously known Richards, the informant, that they had used heroin together, and that Richards had previously supplied appellant. Appellant had seen Richards approximately one and a half hours earlier on the day in question, and Richards suggested that appellant looked "sick," i.e., was suffering withdrawal. Richards asked if appellant knew anyone who had some heroin, because Richards was expecting to get some money from a friend who owed him. Richards suggested that appellant buy a $10 bag which the three of them could use. Appellant responded that there would not be enough in a $10 bag for three persons. Later Richards drove by with the undercover officer, whom he introduced as his partner. Richards said that he did not know anybody he could buy from, and asked if appellant could get some stuff in exchange for a taste of it. Appellant

February 1968 when appellant was so committed. (See Stats. 1965, ch. 1924, p. 4445, § 1; Stats. 1968, ch. 315, p. 685, § 2; *People* v. *Murphy*, 70 Cal.2d 109, 114-115 & fn. 4 [74 Cal.Rptr. 65, 448 P.2d 945]; *People* v. *Jasso*, 2 Cal.App.3d 955, 962 & fn. 6 [82 Cal.Rptr. 229].)

consented, and Richards handed him a $10 bill. Appellant went down the street and made the purchase, then got back in the car. The officer drove to an apartment and got out, saying he had to see if his brother-in-law was there so they could use the place. Shortly afterward the police arrived and arrested appellant.

■ Appellant contends that he was entrapped into the offense by Richards, acting as an agent of the police. This contention is without merit. Appellant relies wholly upon his own testimony, ignoring the testimony of the police officer contained in the transcript of the preliminary hearing. Officer Bohana testified that it was appellant who waved the car to a stop, walked up to the window, and told the informant that he knew where he could get some real good stuff. This constituted substantial evidence from which it may be inferred that the criminal intent to commit the offense originated in the mind of appellant. ■ The conflict in the evidence was exclusively for the trial court to resolve. Entrapment is not shown as a matter of law where there is substantial evidence, even though contradicted, that the criminal intent originated in the mind of the accused. (*People* v. *Meacham,* 256 Cal.App.2d 735, 746 [64 Cal.Rptr. 362]; *People* v. *Ferguson,* 261 Cal.App.2d 807, 811 [68 Cal.Rptr. 431]; *People* v. *Moran,* 1 Cal.3d 755, 760 [83 Cal.Rptr. 411, 463 P.2d 763].)

■ Appellant suggests that the trial judge applied an incorrect standard in determining there was no entrapment. Appellant had testified that he obtained the balloon of heroin for Richards so that appellant could use part of it, but that he never received any. At that point the court asked defense counsel: "Any proof of a contract case?", to which defense counsel replied: "Offer and acceptance, third party beneficiary." Later in announcing his ruling the trial judge stated: "Well, I can not buy the entrapment for failure of the consideration of the third party beneficiary contract and the other facts, but I do think from the Officer's testimony this Defendant more properly is one guilty of possession rather than a trader." Appellant argues the court was applying an irrelevant contract theory to the entrapment defense. This contention is without merit. We think it apparent that the alleged failure of consideration was treated as a reason to find appellant guilty of simple possession rather than sale. The record does not suggest that the court disbelieved the officer's testimony that appellant initiated the transaction by approaching the car and saying that he knew where the informant could get some real good stuff. The trial court referred not only to "failure of the consideration" but also to the officer's testimony "and the

other facts." As an appellate court we are required to uphold the implied findings of the trial court based upon the evidence which supports the judgment. (*People* v. *Sweeney,* 55 Cal.2d 27, 51 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Ferguson, supra,* 261 Cal.App.2d 807, 811; *People* v. *Adams,*[2] 21 Cal.App.3d 972, 980-981 [99 Cal.Rptr. 122].)

## EXCLUSION FROM CRC

In January 1969 appellant was committed to the California Rehabilitation Center (CRC) as a narcotic addict pursuant to Welfare and Institutions Code section 3051. On three occasions appellant was released on outpatient status, but got into various kinds of trouble. According to appellant's testimony he arrived again at the CRC on June 4, 1973, "to do a 60 day limited placement" following his incarceration in the Los Angeles County jail for 45 days on an unspecified offense. In July 1973 he was excluded from the program pursuant to Welfare and Institutions Code section 3053[3] because he was not a fit subject for treatment. Appellant contends that the superintendent of the CRC abused his discretion in excluding appellant from the program. The trial court held a hearing on this issue and concluded that there had been no abuse of discretion.

Angela Idoux, who was a special representative of the California Rehabilitation Center, testified at the hearing that appellant was excluded from the program because of the evaluation of the superintendent of the CRC, Roland W. Woods, that appellant is not amenable to treatment. She testified concerning the CRC's published guidelines and criteria for eligibility for the civil addict program, which call for exclusion of individuals who cannot or will not participate in phases of all the CRC's programs. Included in such guidelines for exclusion are (a) those who have been released several times and who rapidly and repeatedly abscond from supervision and (b) those who repeatedly "relax" to narcotics use with little or no progress demonstrated when they are released from the institution. Appellant fit both of these descriptions, and the reasons for his exclusion were outlined in a letter

[2]Overruled on other grounds, *People* v. *Crowe,* 8 Cal.3d 815, 829 footnote 25 [106 Cal.Rptr. 369, 506 P.2d 193].

[3]"If at any time following receipt at the facility of a person committed pursuant to this article, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted."

dated July 27, 1973, addressed to the trial judge, and signed by R. E. Doran, acting superintendent of the CRC. Appellant had three times been declared a releasee at large, i.e., an outpatient who absconded from supervision in violation of the conditions of release. He was a releasee at large for about six weeks in 1970, for about one month in 1971, and for over eight months between August 1972 and his arrest on April 26, 1973, for an offense which the record does not disclose. Furthermore, while on release he used drugs as frequently as he desired. In addition, while on release appellant had been arrested 15 times for various nonfelony offenses, including drunkenness, reckless driving, petty theft, trespassing, and being in a place where marijuana is smoked, and had served time on some of these offenses. By his own testimony at the hearing, appellant was using heroin prior to his April 1973 arrest, and the petty theft was related to his use of narcotics.

The above facts constituted ample relevant reasons within the meaning of Welfare and Institutions Code section 3053, to exclude appellant from further participation in the program. (See, e.g., *People* v. *Hannagan,* 248 Cal.App.2d 107, 111 [56 Cal.Rptr. 429]; *People* v. *Marquez,* 245 Cal.App.2d 253, 257 [53 Cal.Rptr. 854]; *People* v. *Harris,* 17 Cal.App.3d 388, 398 [95 Cal.Rptr. 80].)

■ There is no merit to appellant's additional contention that the record does not establish that a person with lawful authority actually exercised the discretion to exclude appellant. The discretion is vested by law in the Director of Corrections or his delegate, the superintendent of the CRC. (*People* v. *Hakeem,* 268 Cal.App.2d 877, 882 [74 Cal.Rptr. 511], cert. den., 396 U.S. 913 [24 L.Ed.2d 189, 90 S.Ct. 231].) Appellant seizes on the fact that the July 27, 1973, letter to the court was signed by R. E. Doran, not by Superintendent Woods. However, Angela Idoux testified that Doran was the acting superintendent of the CRC, authorized to act in the superintendent's stead in all respects when the superintendent is away from the institution. The prosecution was not required to show that the superintendent was away from the institution on July 27, 1973. In any event there was ample additional evidence that Superintendent Woods exercised the discretion himself. On a document prepared by the exclusionary review committee, dated July 17, 1973, Superintendent Woods' signature, identified by Angela Idoux, is written under the handwritten word "excluded" and the date July 20, 1973. Furthermore, the Doran letter merely explained the reasons for the superintendent's decision to the court, and did not constitute the decision itself. In addition, Superintendent Woods ratified the Doran letter in a subsequent

letter which he signed, dated October 31, 1973, in which he stated: "Additional information is contained in my correspondence of July 27, 1973." Finally, contrary to appellant's argument, there is no requirement that the superintendent personally interview the patient in order to exercise discretion to exclude him.

■ Appellant contends that the stated reasons for his exclusion were all based upon conduct occurring prior to the current commitment, and that the director may not rely upon such factors because appellant was not immediately excluded on such grounds on his arrival at the CRC June 4, 1973. This contention is wholly without merit. It is quite proper, indeed usual, for the director to rely upon conduct occurring prior to placement. (*People* v. *Carballo,* 234 Cal.App.2d 656, 660-661 [44 Cal.Rptr. 638]. See also *People* v. *Dominguez,* 2 Cal.App.3d 1072, 1075 [83 Cal.Rptr. 226].) Welfare and Institutions Code section 3053 authorizes the director to return the person to court if "at any time following receipt at the facility" the director concludes that the person is not a fit subject for treatment. Appellant's contention is answered by *People* v. *Fuller,* 20 Cal.App.3d 159, 166 [97 Cal.Rptr. 455], where the defendant argued that the director had abused his discretion by excluding the defendant approximately six months after acceptance. The court rejected this contention, pointing out that no statute regulated the maximum period in which rejection or acceptance must be decided. The fact that appellant was in the program for over a month prior to his exclusion in no way estops the director to rely upon precommitment conduct in finding appellant unfit. (*People* v. *Fuller, supra.*)

■ There is the suggestion in appellant's brief that the stated reasons for exclusion were not the "real" reasons. Appellant argues that he was actually excluded because of unsubstantiated rumors that he was a racial agitator in an incident at the institution.

The alleged underlying motives of the director are irrelevant unless they affect the truth of the allegations justifying exclusion. (See *In re Cleaver,* 266 Cal.App.2d 143, 159-160 [72 Cal.Rptr. 20].)[4] In *People* v.

---

[1]In any event on this issue the trial court found against appellant on conflicting evidence. On the one hand, two staff members had "no exclusion concerns" regarding appellant, and in a report they claimed that appellant "would never have been reviewed for exclusion but for grapevine information and opinion [that appellant was an agitator in a racial incident occurring in early July] which these writers considered to be questionable." On the other hand, other staff members disagreed with this evaluation of appellant; the minutes of the program administrator review committee of July 5, 1973, acknowledged that the question of appellant's alleged involvement in the incident was "a

*Marquez, supra,* 245 Cal.App.2d 253, 257, the court states: "The court . . . may not review a return based on a ground which, in law, is relevant. In the case at bench, the return was based, as the record discloses, on the failure of defendant when released on outpatient status, on his marginal intelligence, and on his unwillingness or inability to participate either in the educational or the therapeutic programs at the rehabilitation center. These reasons obviously are 'relevant' within the meaning of the statute; whether or not they were so serious as to require rejection from the program was, as we have said, for the director and not for the court." Once the director cites relevant reasons for exclusion, the court's role is limited to determining whether the *facts* relied upon by the director actually exist. (*People* v. *Fuller, supra,* 20 Cal.App.3d 159, 165.)

In the instant case the director cited appellant's absconding from supervision, repeated criminality, and "relaxation" to drug use, all while on release from the CRC. These facts were shown to exist. As we have stated, they obviously constituted relevant reasons for exclusion. On the instant record, therefore, the trial court had no choice but to find there was no abuse of discretion.

The judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.

---

side issue" which was a "transfer problem"; and even appellant's supporters on the staff conceded that "[w]e realize subject has not been considered for exclusion in relation to the disturbance but on the ground of nonamenability." The trial judge stated: "I do not accept under any circumstances the concept that this exclusion was on any type of racial basis. I think the evidence is clear that the conduct of this defendant while on outpatient status on three separate occasions clearly indicates that this defendant could not conform to the program and certainly the superintendent had every justification to exclude him from the program."