[Crim. No. 25777. Second Dist., Div. Four. Dec. 24, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES WALLACE HAMES, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—In 1969, defendant was charged with possession of heroin, in violation of (then) section 11500 of the Health and Safety Code. On July 11, 1969, he pled nolo contendere to that charge. The criminal proceedings were suspended and, on August 14, 1969, defendant was committed to the California Rehabilitation Center, pursuant to section 3051 of the Welfare and Institutions Code. In March of 1973, the trial court was advised, by a letter from the superintendent of that facility, that defendant had been found unfit for treatment because of a detainer filed against him by the State of Nevada. The criminal proceedings were resumed. On March 5, 1973, defendant's then counsel, a deputy public defender, waived hearing on the exclusion and proceeded to argue for a grant of probation. The matter was continued for a current probation report. When the criminal proceedings were resumed, on March 26, 1973, defendant substituted private counsel for the public defender. The new counsel moved to withdraw both the plea of nolo contendere and the waiver of an exclusionary hearing. Both motions were denied and defendant was sentenced to state prison. On April 23, 1973, he appealed from the order denying his motions.

On June 10, 1974, defendant, appearing in propria persona, moved to vacate the judgment on the ground that he had been advised that the Nevada detainer, which he contends was the sole basis for his rejection from the narcotic treatment program, had been withdrawn. The motion was denied peremptorily. On July 8, 1974, he appealed from that order.

I

We first dispose of various procedural contentions:

(1) We agree with the People that the present appeals do not raise any question regarding the validity of the original finding of guilt, based on the nolo contendere plea, or the commitment order that followed. Apart from the fact that the time to appeal from the commitment order had

elapsed (Pen. Code, § 1237, subd. 1) any appeal from that matter required a certificate of probable cause (Pen. Code, § 1237.5), which the trial court denied.

(2) ■ We reject the frivolous contention by the People that the notice of appeal, dated April 23, 1973, was ineffective because it does not bear a clerk's filing stamp. The record shows that the trial court had acted on that notice by endorsing thereon its refusal to grant a certificate of probable cause. A clerk's and reporter's transcript of all of the proceedings relating to both the April 23, 1974, and the June 10, 1974, orders are before us. Since no certificate of probable cause was needed for the April 23 appeal,[1] the notice, dated that day, and admittedly received by the clerk, was effective to bring before us the March 26th order.

(3) Although the trial court made a casual comment in its minute order of June 10, 1974, denying the second motion, that: "The Court notes for the record that defendant's motion was noticed for May 14, 1974, and that the motion, together with the supporting papers, was dated May 14, 1974, postmarked May 24, 1974, and received by this Court this date," it is clear that the denial was on the merits and not on that ground.[2]

## II

Thus, we have before us two appeals, one from the March 1973, denial of the motion to withdraw the waiver of an exclusionary hearing and one from the June 1974 denial of the motion to vacate.

We conclude that the trial court acted correctly in both instances:

(1) ■ Assuming, without deciding, that such a waiver must be joined in by a defendant personally, and that his silence when his then counsel announced the waiver was not tantamount to such a joinder, it is clear that an exclusionary hearing would have availed defendant nothing. It is not denied that the Nevada detainer was then in full force.

---

[1]*People* v. *Ward* (1967) 66 Cal.2d 571 [58 Cal.Rptr. 313, 426 P.2d 881].

[2]The 1974 motion was, as we have noted above, prepared and filed by the defendant in propria persona. As the trial court noted, it was dated as of May 14, 1974, was postmarked that day and purported to notice the motion for the same day. Clearly that was the result of defendant's lack of understanding of procedure. The motion was acted on by the trial court. The error in notice date prejudiced no one.

In *People* v. *Hernandez* (1970) 10 Cal.App.3d 646 [89 Cal.Rptr. 192], we held that the pendency of deportation proceedings against a defendant was a proper ground for exclusion from the narcotic rehabilitation program, since the deportation would render the defendant incapable of participating in any out-patient program. We there said (at p. 649): "In the case at bench, pending deportation would clearly relate to the party's 'fitness for "confinement or treatment in a rehabilitation facility," ' within the standard of *People* v. *Hannagan, supra,* 248 Cal.App.2d 107, 111 [56 Cal.Rptr. 429], since the program depends on continued availability for treatment. Also pending deportation would effect the party's ability 'to participate either in the educational or therapeutic programs at the rehabilitation center,' within the standard of *People* v. *Marquez, supra,* 245 Cal.App.2d 253, 257 [53 Cal.Rptr. 854], since obviously defendant would not be able to participate in programs at the rehabilitation center when he is deported. The rehabilitation program contemplates an extended period of institutional and outpatient treatment. The law contemplates a seven-year commitment, and a minimum of six months spent as an inpatient, with the addict then being placed on outpatient status (Welf. & Inst. Code, §§ 3151, 3152, 3201), and pending deportation makes this program impossible. Clearly it is a relevant reason for a person's return."

In the case at bench, the same problems would arise once the Nevada detainer had been honored. Had an exclusionary hearing been held, the trial court would have had no choice but to continue with the criminal case. Beyond any possible doubt,[3] the error, if any, in not allowing the waiver to be withdrawn was nonprejudicial.

(2) ■ The June 1974, motion also was properly denied. In *People* v. *Munoz* (1975) 51 Cal.App.3d 559 [124 Cal.Rptr. 322], a defendant had been excluded from the narcotic rehabilitation program solely because of his subsequent conviction of another offense. That subsequent conviction was reversed on appeal and the appellate court took judicial notice that the later case had been dismissed. The *Munoz* court ordered the state prison commitment vacated and remanded the case to the trial court for a new hearing on *Munoz'* eligibility for recommitment to the rehabilitation program. *Munoz* is not helpful to the present defendant. In *Munoz* it was known to the appellate court that, in legal effect, the ground for the exclusion had never existed and, because of the dismissal, never could exist. Here, however, the ground for the exclusion did exist at the time of

---

[3] *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].

the action by the trial court in March 1973; that fact was not wiped out by a subsequent action of Nevada. Moreover, we do not know whether the 1974 cancellation by Nevada of its hold was based on a decision never to prosecute defendant or on an administrative decision to withhold such a determination until defendant had satisfied his California sentence.

Even if we were in agreement that a trial court could vacate an order for the resumption of criminal proceedings after a valid exclusion from the narcotic rehabilitation program (a matter which we do not here decide), it is clear from the record before us that any effort to have defendant returned to the Rehabilitation Center would be futile. Included in the record before us is not only the superintendent's letter of exclusion but the staff diagnostic study of defendant. That document shows that, in addition to the Nevada detainer, defendant was deemed unsuited for the program by reason of his "pattern of criminal behavior." To remand for a new hearing and a new commitment to the program could result only in a second rejection, on the statutory ground of "excessive criminality," and a second state prison sentence. Beyond all reasonable doubt, defendant has suffered no prejudice from the denial of his June 1974 motion.

The orders appealed from are affirmed.

Dunn, J., and Jefferson, J., concurred.