[No. E003269. Fourth Dist., Div. Two. May 19, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD PURCELL WYMER, Defendant and Appellant.

[No. E003586. Fourth Dist., Div. Two. May 19, 1987.]

In re DONALD PURCELL WYMER on Habeas Corpus.

## COUNSEL

Joseph E. Gerbac, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CAMPBELL, P. J.—Defendant appeals from the superior court's denial of his petition for writ of habeas corpus. Defendant has also filed a petition for writ of habeas corpus in this court which we ordered to be consolidated for hearing with the appeal. The appeal and the petition raise the same contention: whether courts have jurisdiction to grant outpatient status to mentally disordered sex offenders (MDSO's) where there is no recommendation for outpatient status by the state hospital director and community program director.[1]

---

[1]Although the MDSO statutes in the Welfare and Institutions Code were repealed, the former MDSO law remains applicable to persons under commitment, or extended commitment, as MDSO's until their commitments are terminated and they are returned to the court for the resumption of criminal proceedings. (Stats. 1981, ch. 928, § 3, pp. 3485-3486.)

## FACTS

In 1978 defendant was charged with burglary and assault with intent to commit rape. Pursuant to a plea bargain, he pleaded guilty to burglary and MDSO proceedings were conducted. Defendant was found to be an MDSO and was committed to Patton State Hospital for a maximum term of four years.

In 1979 defendant was placed on outpatient status. He was returned to Patton after committing another offense.

In 1985 a petition for a two-year extension of defendant's maximum commitment was granted. Defendant's appeal from the extension was affirmed.

Our present review involves defendant's 1986 motion in the superior court to place him on outpatient status. He asserted the court had the power to place him on outpatient status pursuant to Penal Code section 1603 even though the director of Patton State Hospital had not advised the court that defendant was ready for outpatient status. Defendant's motion was superseded by a petition for a writ of habeas corpus which alleged the director of Patton State Hospital had abused his discretion in not advising the superior court defendant should be placed on outpatient status.

An evidentiary hearing was held on the issue of abuse of discretion. At the conclusion of the hearing, the trial court ordered the writ discharged. It found there had been no abuse of discretion by the hospital director. The court ruled that under Penal Code section 1603, recommendations for outpatient status from both the hospital director and community program director are necessary before a hearing on the issue of outpatient status can be held. Thus, said the court, defendant cannot initiate a hearing on outpatient status; the hearing is "triggered" by the court's receipt of the appropriate recommendations from the hospital and program directors, and the court has no jurisdiction to consider or confer outpatient status in the absence of such recommendations.

## DISCUSSION

Defendant appeals from the nonappealable denial of his petition for a writ of habeas corpus. (*In re Hochberg* (1970) 2 Cal.3d 870, 876 [87 Cal.Rptr. 681, 471 P.2d 1].) While the appeal must be dismissed, the issue raised in the appeal is properly before us on the petition for writ of habeas corpus. We proceed to resolution of the issue.

■ Defendant contends the superior court is vested with the power to grant him outpatient status, even if the state hospital director and the community program director do not recommend to the court that he is ready for outpatient status. He argues that the statutes dealing with outpatient status for MDSO's confer such power on the court. Defendant cites no authorities to support his argument, nor does he analyze the language of the statutes.

■ "[I]n the interpretation of a statute where the language is clear, its plain meaning should be followed." (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) When statutory language is both " ' "clear and unambiguous there is no need for construction, and courts should not indulge in it." ' " (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744], quoting *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

The language of Penal Code section 1603 is at issue in this case. The section reads in pertinent part: "(a) Any person . . . may be placed on outpatient status *if all of the following conditions are satisfied*: [¶] (1) The director of the state hospital . . . to which the person has been committed advises the committing court that the defendant would no longer be a danger to the health and safety of others while on outpatient status, and will benefit from such status. [¶] (2) The community program director advises the court that the defendant will benefit from such status, and identifies an appropriate program of supervision and treatment." (Italics added.)

■ The language of section 1603 is unambiguous. The Legislature invested the committing court with discretion to grant outpatient status *only* if the court receives advisements from both the hospital director and program director that the defendant is ready to be considered for an outpatient program. We conclude the committing court has no jurisdiction to consider or confer outpatient status unless it has received such recommendations from the two officials.

■ Defendant argues that conditioning the court's discretion to grant outpatient status upon the happening of the preconditions is a violation of his right to due process. He says that unless the court has the power to grant him outpatient status despite opposition by the hospital director, a "single doctor can affect [his] confinement in a state hospital for up to a lifetime."

*People* v. *Marquez* (1966) 245 Cal.App.2d 253 [53 Cal.Rptr. 854] is comparable. It concluded the Legislature could constitutionally confer upon the director of corrections and his staff the power to determine whether a

defendant was a fit subject for commitment to the California Rehabilitation Center for treatment of drug addiction. "[W]hether or not any given defendant can be treated with success is a fact which, in the last analysis, must be determined not by judges but by people trained in that field and actually engaged in the treatment process. Hence, out of practical necessity, the statute leaves to the professional experts the final decision on whether or not treatment should be begun or be continued. [¶] While the program is partly for the protection of the addict, its primary purpose is 'the prevention of contamination of others and the protection of the public.' [Citation.] It follows that the Legislature could validly leave to the decision of the informed experts the final determination of the question of whether or not the treatment process could be continued with profit. Since a defendant has no absolute right to treatment under the program, the Legislature may make continuance of treatment conditional on any reasonable criterion, determined by such agency as it may reasonably select." (*Id.,* at pp. 256-257, fn. omitted; accord: *People* v. *Wisdom* (1975) 47 Cal.App.3d 482, 488 [120 Cal.Rptr. 745]; *People* v. *Fuller* (1971) 20 Cal.App.3d 159, 165 [97 Cal.Rptr. 455].)

The issue before us is quite similar to that in *Marquez*. ▮ MDSO's have no absolute right to be treated on outpatient status. (See Pen. Code, § 1603.) ▮ While part of the purpose of the MDSO program is treatment, its primary purpose is protection of society from the offender. (*People* v. *Feagley* (1975) 14 Cal.3d 338, 361 [121 Cal.Rptr. 509, 535 P.2d 373].) ▮ Outpatient status is not a privilege given the MDSO to finish out his sentence in a less restricted setting; rather it is a discretionary form of treatment to be ordered by the committing court only if the medical experts who plan and provide treatment conclude that such treatment would benefit the MDSO and cause no undue hazard to the community. (See Pen. Code, § 1603, subds. (a) and (b).) The Legislature can validly assign the medical decision as to what form of treatment an MDSO will undergo to medical experts working in the field and treating the offender. (*People* v. *Marquez, supra,* 245 Cal.App.2d at p. 257.)

The legislative design for placing people on parole under the prior indeterminate sentencing law lends further support to our resolution. Under Penal Code section 3040, the Board of Prison Terms was vested with the sole discretion to grant prisoners the privilege of parole. (*In re Fain* (1983) 145 Cal.App.3d 540, 548 [193 Cal.Rptr. 483].) The Supreme Court held this grant of power to the Board did not violate prisoners' due process rights because they had no "vested right" to parole status. (*In re Smith* (1949) 33 Cal.2d 797, 804-805 [205 P.2d 662].) Also supportive of our view is *People* v. *Barzee* (1963) 213 Cal.App.2d 139 [28 Cal.Rptr. 692], in which a sexual psychopath who was committed to the Department of Mental Hygiene for treatment argued that, upon his request to the court, he had a mandatory

right to be returned to the committing court for hearings on his mental condition. (*Id.,* at p. 140.) *Barzee* held that once a sexual psychopath is "committed for the safety of others and for his own rehabilitation, we find no compulsion of due process requiring that he be returned for a further hearing at his mere whim, and without any sort of showing of good cause, in the face of an adverse report from the department [of mental hygiene]." (*Id.,* at p. 141.)

■ Defendant's assertion that he may languish in the hospital for life at the whim of one doctor unless the committing court has the power to grant him outpatient status without the recommendation of the hospital director or community program director is inaccurate. Defendant's confinement cannot be extended beyond its maximum term without a jury trial at which all constitutional rights of criminal proceedings are afforded him. (Former Welf. & Inst. Code, § 6316.2, subds. (c), (d), (e), & (f).) Such an extension can be for only two years; if authorities seek a further extension, defendant is entitled to another jury trial on his MDSO status. (*Ibid.*) Defendant is also entitled to request the committing court to order the hospital director to submit to the court a report on the state of defendant's health, upon receipt of which the court has the discretionary power to order a hearing on whether defendant is still an MDSO. (Former Welf. & Inst. Code, § 6327.) Finally, by mandamus or habeas corpus defendant can petition for review of the failure of the hospital director and program director to exercise their discretion concerning defendant's readiness for outpatient status. Defendant's due process rights are well protected.

■ Based on the above analysis, we conclude the committing court lacks the power to grant outpatient status to MDSO's committed to state mental hospitals in the absence of advisements by the state hospital director and community program director that the MDSO is ready for outpatient status. An MDSO cannot initiate a hearing on outpatient status; the committing court orders the hearing upon receipt of the advisements of readiness.

Appeal dismissed.

Writ denied.

McDaniel, J., and Havens, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied August 12, 1987.

---

*Assigned by the Chairperson of the Judicial Council.