[Crim. No. 14971. First Dist., Div. Two. Dec. 7, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
MARIO RIVERA, Defendant and Respondent.

[Crim. No. 14972. First Dist., Div. Two. Dec. 7, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
TONY H. LUCAS, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General,

William D. Stein and Ina L. Gyemant, Deputy Attorneys General, for Plaintiff and Appellant.

Douglas S. Paris and Peter G. Keane, under appointments by the Court of Appeal, for Defendants and Respondents.

## OPINION

ROUSE, J.—Consolidated for hearing in this court are two appeals taken by the People from orders entered by the superior court in two separate actions. Both appeals involve a similar question, namely, the applicability of the rule established in the case of *In re Bye* (1974) 12 Cal.3d 96 [115 Cal.Rptr. 382, 524 P.2d 854], to a situation where a defendant, committed to the California Rehabilitation Center (CRC) as a narcotics addict and later released as an outpatient, severs contact with his parole agent and cannot be located for a period in excess of one year.

The relevant facts in *People v. Rivera* (1 Crim. 14971) show that, on January 5, 1972, defendant Mario Rivera pleaded guilty to second degree burglary and, pursuant to section 3051 of the Welfare and Institutions Code, filed a petition for commitment to CRC as a narcotics addict or one imminently in danger of becoming an addict. On January 26, 1972, the court found defendant Rivera to be a narcotics addict, ordered the criminal proceedings suspended and committed him to CRC.

Rivera was received at CRC on February 8, 1972, and remained an inmate of that facility until July 10, 1972, at which time he was released as an outpatient under the supervision of the San Francisco parole office. For a period of approximately three months, Rivera reported regularly to his parole agent and was tested for narcotics use with negative results. On October 17, 1972, his name was entered in the PIN system because his parole agent had been unable to locate him. On January 2, 1973, Rivera was arrested for a traffic violation, and was interviewed at the jail by his parole agent. Apparently, Rivera furnished the agent with a satisfactory explanation for his failure to report, since he was released from the jail and allowed to remain on outpatient status.

Thereafter, Rivera reported regularly to his parole agent and tested negative for narcotics use through July 11, 1973. The parole agent was unable to locate Rivera subsequent to that date, and his name was again

entered in the PIN system on September 21, 1973. On October 24, 1973, on the recommendation of his parole agent, Rivera was declared a releasee at large, and shortly thereafter a warrant for his arrest was issued.

It is the policy of CRC that, when contact with an outpatient is reestablished after he has been a releasee at large for less than one year, a report is prepared concerning the circumstances surrounding his absence. If a satisfactory explanation for his failure to report to the parole agent is furnished, the Narcotic Addict Evaluation Authority may exercise its discretion and allow a resumption of treatment at CRC either on an inpatient or outpatient basis. However, when an individual has been a releasee at large for a period in excess of one year, it is the policy of CRC to recommend the reinstitution of criminal proceedings.

In Rivera's case, he was declared a releasee at large on October 24, 1973, and on October 31, 1974, CRC recommended that the court vacate his civil commitment. On November 14, 1974, the court followed this recommendation, ordered the criminal proceedings reinstated and issued a bench warrant for Rivera's arrest.

On September 27, 1975, Rivera was arrested pursuant to the bench warrant. Thereafter, Rivera moved to set aside the order of November 14, 1974, which had vacated the commitment to CRC and reinstated the criminal proceedings. Following a hearing, the court granted the motion and on October 21, 1975, set aside the November 14 order and remanded Rivera to CRC for a hearing, pursuant to *In re Bye, supra.* The People have appealed from the order of October 21, 1975.

The facts in *People* v. *Lucas* (1 Crim. 14972) are similar to those in *People* v. *Rivera.* On June 21, 1973, defendant Tony Lucas was found guilty of second degree burglary. Thereafter, he requested an examination and hearing to determine whether he was a narcotics addict or in imminent danger of becoming one. On August 28, 1973, the court found that Lucas was a potential or actual narcotics addict and committed him to CRC.

Lucas was received at CRC on August 31, 1973, and was treated as an inpatient until February 5, 1974, at which time he was released as an outpatient under the supervision of the Ontario parole office. On February 19, 1974, Lucas telephoned his parole agent from the Belmont

Hotel in Long Beach and advised him that he had moved to that locality to seek employment. The parole agent advised Lucas that his case would have to be transferred to a parole agent in the Long Beach area and that it would be necessary for Lucas to furnish the name and address of his employer. Subsequently, the parole agent verified Lucas' residency at the hotel and left a message for Lucas to call him. Lucas failed to do so, and it later developed that he had left the hotel.

On April 9, 1974, in accordance with the recommendation of the parole agent, Lucas was declared a releasee at large, and on April 11, 1974, a warrant for his arrest was issued.

On July 21, 1975, when more than one year elapsed, CRC followed its established policy and requested that the court vacate Lucas' civil commitment and reinstate criminal proceedings. The court did so by order of July 29, 1975, and also issued its bench warrant.

In September 1975, Lucas was arrested on the bench warrant in San Francisco. On September 29, 1975, Lucas moved to vacate the July 29 order which had vacated his civil commitment and reinstated the criminal proceedings. Following a hearing, the court granted the motion by its order of October 21, 1975. The court stated, in this order, that with the consent of counsel, the court had "heard the matter as a 3053 Welfare & Institutions Code Hearing to determine whether or not Narcotic Evaluation Authority abused their discretion in excluding Mr. Lucas from the program." In the light of *In re Bye, supra,* the court ordered criminal proceedings suspended and civil proceedings reinstated and directed that Lucas be remanded to CRC for reconsideration of that institution's previous decision to exclude Lucas from the narcotic rehabilitation program. The People filed notice of appeal from this order.

In *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], the United States Supreme Court held that arbitrary revocation of parole was not consonant with the minimal requirements of due process and that a parolee threatened with revocation was entitled to a prerevocation hearing held near the site of the alleged violation, followed by a formal revocation hearing before a neutral and detached body. (Pp. 486-487, 489 [33 L.Ed.2d pp. 497-498, 499].)

In *In re Bye, supra,* our state Supreme Court was called upon to determine whether the *Morrissey* reasoning was applicable to an individual who had been committed to CRC as a narcotics addict, had been granted outpatient status, and was then threatened with the revocation of such status. The *Bye* court concluded that the *Morrissey* reasoning did apply, and that, although the CRC outpatient was not entitled to all of the procedural safeguards enumerated by the *Morrissey* court, he was entitled to a single revocation hearing held at CRC and to the following safeguards: "(1) written notice of the claimed violations of his release; (2) disclosure of evidence against him; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a neutral hearing body such as the NAEA or a hearing officer or officers selected by NAEA; and (6) a written statement by the factfinder as to the evidence relied on and reasons for revoking outpatient status. In addition, the outpatient should be represented by counsel if NAEA determines that the matter comes within the ambit of those cases where such assistance is deemed necessary under the guidelines set out in *In re Love* (1974) 11 Cal.3d 179, 186 [113 Cal.Rptr. 89, 520 P.2d 713], and *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 790-791 [36 L.Ed.2d 656, 666-667, 93 S.Ct. 1756]." (P. 110.)

■ The Attorney General contends that neither Rivera nor Lucas were entitled to the type of hearing specified in the *Bye* case because the *Bye* rule applies only where a defendant's outpatient status is *revoked* and he is returned to CRC, and not where, as here, a defendant with outpatient status is *excluded* from the narcotic rehabilitation program and returned to the superior court for the reinstatement of criminal proceedings.

The Attorney General bases this argument upon three appellate court cases, all of which were decided prior to *In re Bye, supra. People v. Pruett* (1973) 31 Cal.App.3d 1 [105 Cal.Rptr. 204], the earliest of the three decisions, is readily distinguishable from the situation here presented. There, the defendant was an inpatient of CRC, rather than an outpatient, at the time when that institution returned him to the superior court because of his excessive criminality. The superior court denied the defendant's motion to be returned to CRC and sentenced him to prison. Although the defendant contended on appeal that he should have been accorded the procedural safeguards enumerated in *Morrissey v. Brewer,*

*supra,* the appellate court rejected this argument on the ground that the *Morrissey* rule applied only to an individual who had been granted "qualified" liberty and not to an individual, such as defendant Pruett, who had been subjected to incarceration in a security institution such as CRC. The *Pruett* court expressly declined to pass upon the question subsequently resolved in the *Bye* case, stating, "Whether *Morrissey* would apply to a return [to inpatient status at CRC] . . . of persons previously granted 'out-patient status' . . . is not before us in this case; we make no attempt to pass on that potential issue." (*People* v. *Pruett, supra,* at p. 4, fn. 2.)

The other two cases upon which the People rely, *People* v. *Gifford* (1974) 38 Cal.App.3d 89 [113 Cal.Rptr. 112], and *People* v. *Hillock* (1974) 39 Cal.App.3d 36 [113 Cal.Rptr. 823], dealt with the procedural rights of CRC outpatients, but both cases involved circumstances substantially different from those with which we are here confronted. In *Gifford,* the defendant was on outpatient status from CRC when he was arrested for burglary, pleaded guilty to that offense and was sentenced to state prison. As a result of that conviction, he was returned from CRC to the court, where criminal proceedings were resumed and he was sentenced to state prison on the original conviction rendered before he was sent to CRC. The defendant contended on appeal that the proceedings held after his return to court from CRC did not meet the requirements of the *Morrissey* case. The appellate court rejected this argument and held that since the defendant's conviction and incarceration on the burglary charge had rendered him ineligible as a matter of law for further commitment to CRC, the sole issue which the defendant could have raised upon his return from CRC was his identity as the burglar-convict. This fact was established beyond question at the court hearing; hence there was no need for any other hearing. The *Gifford* court, in so holding (and apparently in anticipation of the *Bye* decision), took pains to differentiate between the situation present in *Gifford,* where a CRC outpatient was returned to the court, and a situation where such an outpatient was returned to CRC. The court expressly stated that it was not dealing with the application of the *Morrissey* case "to the return to the center of an out-patient, on grounds that he has not fulfilled the requirements of such a releasee." (P. 91, fn. 2.)

In *People* v. *Hillock, supra,* the defendant, who had been committed to CRC and released as an outpatient, thereafter resumed the use of narcotics, committed certain crimes and was convicted thereof. Proceed-

ings were then conducted at CRC which resulted in his exclusion from the narcotic rehabilitation program. The proceedings in question consisted of a hearing before correctional personnel and a second hearing before two associate superintendents and a deputy superintendent. A final decision was then made by the superintendent, who determined that the defendant was not amenable to treatment and excluded him from the program. The trial court held that the superintendent had not abused his discretion, and it reinstated the criminal proceedings and sentenced the defendant to prison. The defendant contended on appeal that he had not been afforded the procedural safeguards enumerated in the *Morrissey* case because he was not given written notice of the allegations against him, was not given a written report of the reasons for exclusion, was not present at the hearings and was not given the opportunity to confront and cross-examine the witnesses against him. The appellate court rejected this argument, stating, "Here the question presented is not one of the individual's being committed to the institution, but of his being excluded from it. The determination of the superintendent in itself did not deprive appellant of liberty; it served only to return him to court where a hearing was conducted and sentence ultimately was imposed. The action of the superintendent is not to be compared with that of a board in revoking parole, or of a court in revoking probation; it is more nearly analogous to that of a probation officer in *recommending* that probation be revoked, which action is followed (as was the recommendation here) by a hearing before the court, wherein the defendant has the opportunity to appear, to confront and cross-examine the witnesses against him, and to testify in his own behalf. The administrative action in itself thus is not subject to *Morrissey* standards. (*People* v. *Pruett,* 31 Cal.App.3d 1, 4 [105 Cal.Rptr. 204].) The evidence presented amply supports the court's determination that the superintendent did not abuse his discretion." (Pp. 38-39.)

The Attorney General argues from the three cases discussed above that a *Bye* hearing at CRC is required only when an outpatient is returned to confinement as an inpatient at CRC; and that in any instance where a CRC outpatient is returned by CRC to the court, the requirements of due process will of necessity be met by the in-court hearing, and a separate, independent hearing at CRC would be totally superfluous. Thus, the Attorney General points out that where, as here, a defendant is excluded from CRC, pursuant to section 3053 of the Welfare and Institutions Code, because of "excessive criminality or for other relevant reason," the trial court must, at the request of the

defendant, review the director's decision to exclude the defendant and, if the court finds such decision to be an abuse of discretion, should either require the director to reconsider his decision or should order the defendant returned to CRC for execution of the court's original commitment order. (*People* v. *Morgan* (1971) 21 Cal.App.3d 33, 38-39 [98 Cal.Rptr. 165]; *People* v. *Montgomery* (1967) 255 Cal.App.2d 127, 131 [62 Cal.Rptr. 895].) The People reason that the defendant's right to such a hearing obviates any need for an independent hearing at CRC; hence, the trial court in the instant case should not have returned Rivera and Lucas to CRC for a hearing but should merely have determined for itself whether the director's decision to exclude the two defendants from the rehabilitation program constituted an abuse of discretion.

The People's reasoning, although persuasive at first blush, becomes considerably less convincing when applied to the particular facts of this case. It is evident that in both *People* v. *Gifford* and *People* v. *Hillock,* both *supra,* the in-court hearing provided an entirely appropriate forum in which to review the propriety of the defendant's exclusion from the narcotic rehabilitation program. Thus, in *Gifford,* the only question which could have been raised (and which was in fact never actually in question) was the defendant's identity as a convicted burglar. In *Hillock,* the in-court hearing had been preceded by two administrative hearings at CRC. A cumulative case summary from CRC was received in evidence at the court hearing, and a representative of the civil addict program gave testimony concerning the administrative hearings and was subject to cross-examination by the defendant, who also testified on his own behalf. The instant case, however, presents a markedly dissimilar situation. Although it is argued by the Attorney General that all of the defendants' due process needs can be met by a hearing at which the court reviews the director's exercise of discretion in excluding the defendants from the rehabilitation program, the evidence produced in this instance shows that there was no true exercise of discretion by CRC in connection with the decision to exclude Rivera and Lucas from the rehabilitation program and return them to court; that CRC instead followed an established, inalterable policy applicable to any outpatient who was missing for over one year and declined to make any inquiry into the facts surrounding his absence. It follows that in reviewing the exercise of CRC's "discretion," the court, of necessity, would be limited to determining whether exclusion from the rehabilitation program must invariably occur in any instance where an outpatient ceased to maintain contact with CRC for a period in excess of one year. In the instant case,

the procedure followed by CRC was described at the Lucas hearing in the trial court by Miss Catlett, a special representative for the Civil Addict Program at CRC. She testified that where contact with a CRC outpatient is reestablished at any time when he has been a releasee at large for less than one year, an inquiry is made into the facts surrounding his failure to report, and if there is no indication of criminal behavior or a resumption of drug use, a decision may be made either to restore him to outpatient status or to return him to CRC as an inpatient. Following the expiration of the one-year period, no inquiry into the facts is made, and the defendant is automatically returned to court with a recommendation that criminal proceedings be reinstated.

It is evident from the remarks made by the trial court at the Lucas hearing[1] that it deemed the one-year cutoff date to be arbitrary and that the court concluded that CRC's refusal to conduct a *Bye* hearing, or indeed any sort of inquiry into the underlying facts, merely because a period of one year had elapsed, was an abuse of discretion. The trial court stated: "There doesn't seem to be [a] rational basis for returning someone for a Bye hearing if they are apprehended on the 364th day but not the 365th, to reduce the issue to its simplest form. And it may well be an exercise in futility because I do not think it is unreasonable that they decline to continue treating someone who deliberately refuses to report. But I guess it could well be that if a person were gainfully employed for a year and was leading an otherwise respectable life and not using narcotics, that there wouldn't be any reason for not taking him back into the facility, if the only reason he didn't report was just an arbitrary one on his part.

"Now, we know here in this county many people go on probation and they just fail to report for a variety of stupid reasons, and they are brought in on motions to revoke. Sometimes they are continued on probation and sometimes they are not. It may well be that a given individual . . . that he could present a reason why his violation . . . was not so grievous as to require that he be returned to the criminal courts for sentence, and that they could successfully continue treating him."

---

[1] The Rivera and Lucas motions were both heard and decided by the same trial judge on the same day. Therefore, it is reasonable to assume that the views which the court expressed at the Lucas hearing were also indicative of the reasoning underlying its decision in the Rivera case.

The trial court also quoted as follows from *In re Bye, supra,* at page 111: "The purpose of our holding herein is to provide a quantum of due process protection to outpatients threatened with the loss of their interest in conditional liberty by providing them with a means of insuring that the discretionary decision to terminate that interest is made upon a full understanding and awareness of all relevant facts. The opportunity to appear at such a forum to protect such interest is a fundamental constitutional right."

It is evident from the remarks made by the trial court that it concluded that the conditional liberty of Rivera and Lucas had been terminated by CRC without any "discretionary decision . . . made upon a full understanding and awareness of all relevant facts"; that the mandate of the *Bye* case, therefore, had been ignored and that the appropriate procedure was to return the defendants to CRC in order that reconsideration of the decision to exclude them from the rehabilitation program could be made based upon a consideration of all the relevant facts.

The trial court's conclusion appears proper in all respects. We cannot accept the People's contention that the trial court ought to have determined for itself whether the defendants should be excluded from the rehabilitation program. The authorities cited by the People establish only that the court possesses the authority to determine whether an abuse of discretion has occurred in connection with a decision to exclude a defendant from the rehabilitation program. The trial court, in effect, found such an abuse of discretion in the application of the arbitrary one-year cutoff policy. Having made this determination, a remand to CRC for reconsideration was the only reasonable course of action. As pointed out in *People* v. *Marquez* (1966) 245 Cal.App.2d 253, 256-257 [53 Cal.Rptr. 854], "[T]he judge has no expertise to decide . . . that the defendant, in fact, is a fit subject for commitment and treatment, judged either by his past record or by his ability (for reasons either of character, intelligence or aptitude) to respond to treatment; the judicial decision is merely that, as far as the court's limited knowledge about defendant, and the judge's nonexpert opinion, permit, it is worthwhile to try the rehabilitation program in his case. But whether or not any given defendant can be treated with success is a fact which, in the last analysis, must be determined not by judges but by people trained in that field and actually engaged in the treatment process. Hence, out of practical necessity, the statute [Welf. & Inst. Code, § 3051] leaves to the professional experts the final decision on whether or not treatment

should be begun or be continued." (To the same effect, see *People* v. *Hakeem* (1969) 268 Cal.App.2d 877, 881, 882 [74 Cal.Rptr. 511].)

The orders appealed from are affirmed.

Taylor, P. J., and Kane, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 3, 1977.