Opinion
KAUS, P. J.
Defendant Miguel Dominguez Lopez pleaded guilty to a charge of possession of heroin; he was found to be a narcotic drug addict and committed to the California Rehabilitation Center (CRC) in June 1975. In July 1976, the director of CRC recommended that defendant be excluded from CRC on grounds that he was a member of a gang and had participated in the stabbing of four rival gang members.[1] After a hearing in the superior court, the trial court upheld the director’s recommendation and sentenced defendant to prison with credit for all time served.
Facts
Paula Catlett, a CRC employee, testified at defendant’s hearing in the superior court. She brought defendant’s CRC records. Ms. Catlett had no personal knowledge of defendant’s involvement in the gang activity and stabbing. She relied on, and read from reports prepared by CRC personnel, in particular memos signed by the program administrator, *898 James L. Mason, which stated that “reliable informants identified subject as being directly involved in the adw of another resident” and that defendant “participated in the pre-planning and in the hit” on the victim. This report stated that “Lieutenant R. Briggs and C. Marshall obtained above information,” and was also signed by Marshall.
After Ms. Catlett finished her testimony, defense counsel requested a continuance so that Lieutenants Marshall and Briggs could be subpoenaed. The court granted the continuance. The People moved to quash the subpoenas. Included in the People’s moving papers was an affidavit by Charles Marshall in which he declared that he interviewed a resident, whom he identified as “#12” after the incident; that #12 had worked with Marshall for about a year and a half in connection with narcotics investigations and had provided reliable information; and that #12 recognized defendant as one of the attackers. Marshall declared that he was also advised by Lieutenant Briggs that Briggs “had information (source unknown)” that defendant was involved in the assault. Marshall also interviewed “#2” who also said that defendant was involved in the planning and assault, and “3,” who, although not identifying defendant, corroborated other information concerning the participants which had been furnished by #2.
The trial court then ordered that the subpoenas be quashed.
Discussion
We can quickly dispose of defendant’s contention that the knifing of a fellow inmate does not constitute grounds for exclusion from CRC. Leaving aside this court’s very limited scope of review of an administrative decision to exclude an inmate from CRC (e.g., People v. Wisdom (1975) 47 Cal.App.3d 482, 487 [120 Cal.Rptr. 745]), the contention defies common sense. We find equally without merit defendant’s contention that his exclusion from CRC and sentence to prison constitutes cruel and unusual punishment. (See People v. Bowens (1964) 229 Cal.App.2d 590, 601 [40 Cal.Rptr. 435].)
This brings us to the core of defendant’s appeal: that the trial court erred in quashing the subpoenas served on the officers who had received the information—albeit secondhand[2]—that defendant was involved in the assault.
*899 The Attorney General argues that defendant’s contention that he is entitled to examine the officers has “been twice rejected by appellate courts in this state.” Respondent is mistaken. People v. Morgan (1971) 21 Cal.App.3d 33, 41 [98 Cal.Rptr. 165], and People v. Fuller (1971) 20 Cal.App.3d 159, 166-167 [97 Cal.Rptr. 455], held that the defendants were not entitled to subpoena the director of CRC, since the director had no more first-hand information than the custodian who did appear in court.
In this case, defendant wishes to question those persons closest to the source of information concerning his involvement in the assault. Although we are aware of no case in which the issue was raised, that a defendant would have a right to cross-examine witnesses was suggested in People v. Montgomery (1967) 255 Cal.App.3d 127, 131 [62 Cal.Rptr. 895], and assumed in People v. Hillock (1974) 39 Cal.App.3d 36, 38-39 [113 Cal.Rptr. 823], Whether or not a personal examination of the officers would yield any more or different information than that furnished in Marshall’s affidavit, fundamental fairness dictates that defendant be given the opportunity to question those officers.[3]
If the theory on which the trial court quashed defendant’s subpoenas were correct, the return of an addict to the trial court under section 3053 of the Welfare and Institutions Code would become an ex parte proceeding in fact, if not in name. Our cases quite properly hold that the power of the superior court to review the discretion of the Director of Corrections to exclude an addict under section 3053 of the Welfare and Institutions Code is severely limited. (People v. Rivera (1976) 64 Cal.App.3d 644, 654 [134 Cal.Rptr. 692]; People v. Hakeem (1969) 268 Cal.App.2d 877, 881-882 [74 Cal.Rptr. 511]; People v. Marquez (1966) 245 Cal.App.2d 253, 256-257 [53 Cal.Rptr. 854].) The cases further recognize however, that there is a distinction between the exercise of discretion to exclude on given facts and an addict’s right to establish that the director’s recommendation to exclude rests on a false factual premise.
In People v. Munoz (1973) 31 Cal.App.3d 87 [107 Cal.Rptr. 451], the court stated: “However, while the reasons given by the superintendent for the exclusion fall within the scope of relevancy set forth in section *900 3053, the question of whether there was a factual basis for the superintendent’s determination that the defendant had engaged in excessive trafficking and had failed to respond to previous programs remains for consideration.” (Id, at pp. 92-93; see also People v. Hakeem, supra, 268 Cal.App.2d 877, 882.) In People v. Hillock, supra, 39 Cal.App.3d 36, the defendant argued that he was not given a hearing complying with the procedural standards of Morrissey v. Brewer, 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 1179], before being excluded.[4] In disposing of that contention the court stated: “Here the question presented is not one of the individual’s being committed to the institution, but of his being excluded from it. The determination of the superintendent in itself did not deprive appellant of liberty; it served only to return him to court where a hearing was conducted and sentence ultimately was imposed. The action of the superintendent is not to be compared with that of a board in revoking parole, or of a court in revoking probation; it is more nearly analogous to that of a probation officer in recommending [italics in original] that probation be revoked, which action is followed (as was the recommendation here) by a hearing before the court, wherein the defendant has the opportunity to appear, to confront and cross-examine the witnesses against him, [italics added] and to testify in his own behalf. The administrative action in itself thus is not subject to Morrissey standards. [Citation.]” (Id., at pp. 38-39.)
Thus the exclusion hearing in the trial court serves to protect the defendant’s Morrissey rights to due process in the exclusion process. (See Ingram v. Rees (N.D. Cal. 1976) 407 F.Supp. 226, 227.) The right to confrontation in such circumstances is not absolute. The cases decided under Morrissey principles make clear that confrontation may be denied for good cause, e.g., where it could endanger an informant or seriously disrupt the institution. (Wolff v. McDonnell (1974) 418 U.S. 539, 566-567 [41 L.Ed.2d 935, 956-957, 94 S.Ct. 2963]; In re Bye, supra, 12 Cal.3d 96, 110; In re Prewitt (1972) 8 Cal.3d 470, 476 [105 Cal.Rptr. 318, 503 P.2d 1326]; People v. Vickers (1972) 8 Cal.3d 451, 457 [105 Cal.Rptr. 305, 503 P.2d 1313].)
In this case defendant does not claim the right to the names of the informant witnesses. He seeks to cross-examine the officers to learn, from the conversations the officers had, the extent of the witnesses’ opportunity to observe defendant and identify him as one of the planners *901 and participant in the stabbings. Defendant evidently hopes to show by such cross-examination that the identifications were impossible or so inherently improbable that it could be said there is no factual basis for the director’s decision to exclude him. In the circumstances of this case, fairness demands that defendant be given that opportunity. At this point in time we are not convinced by the Attorney General’s argument that cross-examination could not reveal anything more than stated in Marshall’s affidavit, without disclosing the identities of the informants. It is possible that more details will be developed about the informants’ opportunity to observe. The trial court can control the cross-examination to prevent disclosure of information which should not be revealed.
The judgment is reversed to permit defendant to reopen his hearing on his exclusion from CRC in order to subpoena the requested witnesses. In the event that defendant does not move within 30 days after this opinion is final to reopen his CRC exclusion hearing and to request the issuance of subpoenas, the trial court is directed to reinstate the judgment.
Stephens, J., and Ashby, J., concurred.
A petition for a rehearing was denied August 16, 1977, and the opinion was modified to read as printed above. Respondent’s petition for a hearing by the Supreme Court was denied September 15, 1977. Tobriner, J., Clark, J., and Richardson, J., were of the opinion that the petition should be granted.

The recommendation was made under section 3053 of the Welfare and Institutions Code which allows the Director of Corrections to return an addict to the court in which the case originated on the basis that he is not a fit subject for confinement or treatment “because of excessive criminality or for other relevant reason ....’’

Neither in the trial court nor on appeal does defendant contend that he is entitled to have the names of the informants disclosed.

The assault occurred in a darkened theater; three victims were found in a breezeway apparently adjacent to the theater, and the fourth, after a “standup strip count.” Examination of the officers might reveal facts tending to show that the informants were not in a good position to identify defendant.

Hillock was decided a few months before In re Bye (1974) 12 Cal.3d 96 [115 Cal.Rptr. 382, 524 P.2d 854], which established the right of an outpatient to certain procedural safeguards in connection with revocation of his conditional release on outpatient status. (Id, at p. 110.)